# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

BRANDON ELLIS, *et al.*,

    Plaintiffs,

v.                                                    Civ. No. 17-1011 WJ/GBW

HOBBS POLICE DEPTARTMENT, *et al.*,

    Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND DENYING DEFENDANTS' REQUEST FOR ATTORNEY'S FEES

This matter comes before the Court on Plaintiffs' Motion for Protective Order. *Doc. 48*. The Court has reviewed the briefing and conducted a hearing on the matter. *See docs. 51, 56, 73*. Plaintiffs seek a protective order under Federal Rule of Civil Procedure 26(c), which permits the Court, with good cause, to issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Specifically, Plaintiffs move the Court to prevent defense counsel from questioning witnesses as to their perceptions and feelings about different forms of the "N-word" ("n***a" versus "n***er"). *Doc. 48* at 1.

The questioning to which Plaintiffs object arises from the use of the N-word by an employee at Hobbs Police Department, where Plaintiffs formerly worked. In support of their claims that they experienced racial discrimination and retaliation for whistleblowing at the Hobbs Police Department, Plaintiffs allege in their Complaint that

a fellow employee, Officer Berdoza, stated during a briefing, "looks like we arrested a lot of Niggas today." *Doc. 1* at 5. Plaintiffs further allege that Officer Berdoza frequently used the N-word without correction from his supervisor Sergeant Herrera. *Id*. During the deposition of Joseph Cotton on July 24, 2018, Plaintiffs' counsel questioned Mr. Cotton about the briefing incident on direct examination, including extended inquiries about the inappropriateness of the N-word and its derogatory nature. *See doc. 48-1* at 41–46. On cross-examination, defense counsel engaged in the following exchange with Mr. Cotton:

> Q: Now, have you heard that the term that Officer Berdoza used was not N-I-G-G-E-R, but the term N-I-G-G-A-S?
> A: I don't care how you spell it, the meaning is the same.
> Q: Okay.
> A: But whether you spell it nigga, nigger, negro, however you spell it, the meaning and the concept is the same. It should not be used, period.
> Q: Now, as you may be aware that in popular culture, especially music, that term, N-I-G-G-A, is often used with great frequency, that it's not used as a term of derision, that it is used as a term of inclusion. Would you agree with that?

*Doc. 48-1* at 124–125. Defense counsel persisted in this line of questioning, going on to ask Mr. Cotton in detail about whether the word was offensive when used by African Americans,[1] or when used by people in their own homes. *Doc. 48-1* at 125, 126. Defense counsel further pressed Mr. Cotton on whether the use of any version of the N-word was "forgivable." *Doc. 48-1* at 127–130. Because of the impact on Mr. Cotton of these

---

[1] For an example of the kind of questions asked, *see doc. 48-1* at 125 ("So in your view, it's wrong to [sic] African Americans to use the term N-I-G-G-E-R.").

questions, Plaintiffs object to defense counsel questioning future deponents about the meaning and import of "n***a" versus "n***er."  *See doc. 56-1.*

Whether the distinction between these terms can be relevant has been considered by the Tenth Circuit Court of Appeals in *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1230 (10th Cir. 2015).  In *Lounds*, the plaintiff brought a claim of hostile work environment alleging, among many other things, the use of the term "n***a" at her place of employment.  *Id*. at 1219.  The district court had concluded that, because the employees did not intend the use of the term to insult or ridicule plaintiff, it could not be considered part of a hostile work environment.  *Id*. at 1228.  The court of appeals rejected this approach explaining that a court must focus "on whether a reasonable jury could find … that the subjective and objective effect of their conduct was to pollute the environment with harassing conduct that was … racially humiliating, offensive, or insulting."  *Id*. at 1232.  On this point, the court of appeals noted that "in certain contexts, some people might discern a distinction between ["n***a" and "n****r"] and view the former as less offensive."  *Id*. at 1230.  Consequently, "this is the kind of question that should be left to the judgment of a reasonable jury."  *Id*.  In short, *Lounds* supports the conclusion that the degree to which a reasonable person (objective) and the particular plaintiff (subjective) would find the "n***a" term offensive is relevant to a hostile work environment claim reliant on the use of that term.

3

Based on counsel's statements at the hearing, it appears that questions along these lines will be posed to Plaintiff Ellis and, possibly, Plaintiff Robinson. Thus, in both circumstances, at least in the discovery phase, the degree to which they find the term "n***a" offensive is a relevant component of the hostile work environment claim and their damages. Given the possible distinction between the offensiveness of the terms "n***a" and "n****r," Defendants must be allowed some leeway to probe the plaintiffs' own distinctions should there be any. Therefore, the motion for a protective order will be denied.

Nonetheless, as it expressed at the hearing, many of the questions posed to Mr. Cotton would have been prohibited by this Court. In particular, counsel's questions directed at the "forgivability" of the use of such terms and the imprecise questions about whether the use of the terms would be considered a "crime" significantly annoyed and embarrassed Mr. Cotton within the meaning of Rule 26(c)(1). Because those questions were not tightly focused on eliciting Mr. Cotton's opinion about the relative offensiveness of the terms, they were insufficiently directed at relevant information to overcome that negative consequence. Thus, the Court would not permit such questions in the future. As did Plaintiffs' counsel, the Court fully accepts Defendants' counsel's statement that the questions were not designed for ill purpose. And the Court anticipates that counsel's questions in the depositions specified above will be focused on the relevant issue as outlined above. To ensure the appropriate

protection of Plaintiff Ellis as well as providing for the discovery needs of Defendants, the Court will be available telephonically during Plaintiff Ellis' deposition should a dispute related to this issue arise.

Finally, upon resolution of motions to compel or for protective orders, the "losing" party must be required to pay the reasonable expenses incurred in making or opposing the motion. *See* Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5). However, this payment shall not be required if (i) the "losing" party's grounds were "substantially justified" or (ii) the "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Here, although Plaintiffs have failed to demonstrate good cause sufficient to support a protective order, the Court finds that Plaintiffs' Motion was substantially justified. "Substantially justified," in the context of Rule 37, means "'not justified to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Lester v. City of Lafayette*, 639 F. App'x. 538, 542 (10th Cir. 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (internal quotation marks omitted). The key to determining whether attorney-fee sanctions are warranted under Rule 37(a)(5)(B) is "whether reasonable people could differ as to the appropriateness" of the denied motion. *Id*. at 543; *see also Pierce*, 487 U.S. at 565 (describing motions as justified if there is a "genuine dispute"). Plaintiffs' Motion unquestionably satisfies this standard. Accordingly, an attorney's fees sanction under Rule 37(a)(5)(B) would be inappropriate.

WHEREFORE, Plaintiff's Motion for Protective Order (*doc. 48*) is DENIED and Defendant's request for its attorney's fees and costs reasonably expended in responding to Plaintiff's Motion in accordance with Fed. R. Civ. P. 37(a)(5)(B) (*doc.* 51) is also DENIED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE