IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


BRANDON ELLIS, *et al.*,

    Plaintiffs,

v.                                                Civ. No. 17-1011 WJ/GBW

HOBBS POLICE DEPARTMENT, *et al.*,

    Defendants.


## ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DEFENDANT MCCALL'S RESPONSES TO WRITTEN DISCOVERY

THIS MATTER is before the Court on Plaintiffs' Motion to Compel Chief Christopher McCall's Responses to Written Discovery (*doc. 67*) and the attendant briefing (*docs. 77*, *93*). Defendant McCall objected in his Answers to all of Plaintiff's interrogatories and requests for production on several grounds, including relevancy and proportionality, constitutional zone of privacy, existence of a collective bargaining agreement, and numerosity. *See generally docs. 72-5*, *72-6*. Because the Court finds that the interrogatories directed to Defendant McCall exceeded the total number allowed, it hereby DENIES Plaintiffs' Motion to Compel and reserves ruling on Defendant's other objections until Plaintiffs have amended their interrogatories.

## I. Interrogatories

By order of the Court,[1] each side in this case is limited to fifty (50) interrogatories and fifty (50) requests for production to serve or notice on the other side. *Doc. 26* at 1. Plaintiffs submitted thirteen numbered interrogatories to Defendant McCall. *See doc. 72-5*. However, Defendant McCall contends that Plaintiffs exceeded the interrogatory limit in Interrogatory No. 8 by using subparts that constitute discrete questions and should therefore count as separate interrogatories. *Doc. 77* at 15–16.

Courts have recognized that, while interrogatory subparts are permissible, "[e]xtensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained…in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory." *Williams v. Board of County Commissioners*, 192 F.R.D. 698, 701 (D. Kans. 2000). Accordingly, parties "cannot evade [interrogatory limitations] through the device of joining as 'subparts' questions that seek information about discrete separate subjects." *Soseeah v. Sentry Ins.*, 2013 WL 11327129, at *6 (D.N.M. Nov. 4, 2013) (quoting Fed. R. Civ. P. 33 Advisory Committee Notes (1993 Amendment)).

---

[1] The Court's Order Setting Pretrial Deadlines and Briefing Schedule (*doc. 26*) supersedes the default limitations of the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 33(a)(1) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.").

Determining which subparts of an interrogatory constitute discrete questions is a "case-specific assessment" not reducible to a "crisp verbal formula." *Synopsys, Inc. v. Atoptech, Inc.*, 319 F.R.D. 293, 295 (N.D. Cal. 2016) (internal citation omitted). *See also Burget v. Capital W. Secs., Inc.*, 2010 WL 11508643, at *2 (W.D. Okla. Mar. 30, 2010) ("The difficulty with the numerical limitations of interrogatories lies with how to count both the discrete and natural subparts to interrogatories," which courts generally resolve "on a case-by-case basis"). However, courts have developed some general principles for counting interrogatories. Subparts directed toward a "common theme" should generally be counted as a single interrogatory, while "subparts inquiring into discrete areas" are generally counted as multiple interrogatories. *Williams*, 192 F.R.D. at 701 (quoting Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994)); *see also Meadows v. Home Depot USA, Inc.*, 2002 WL 31374956, at *2 (D. Kans. August 29, 2002) (explaining that "subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question," while "subparts that inquire into discrete areas should, in most cases, be counted as more than one interrogatory"). Parties may not evade discovery limitations "through the device of joining as 'subparts' questions that seek information about discrete separate subjects." *Meadows*, 2002 WL 31374956, at *2.

More specifically, some courts have held that "[s]ubparts count as one interrogatory…only if they are logically or factually subsumed within and necessarily

related to the primary question." *EEOC v. New Mexico Corrections Dep't*, Civ. No 15-879 KG/KK (D.N.M. Sept. 30, 2016) (quoting *Rodriguez v. Chavez*, 2013 WL 1444183, at *1 (D. Colo. Apr. 9, 2013)). Put another way, subparts are considered discrete "if the first question can be answered fully and completely without answering the second question." *Paananen v. Cellco P'ship*, 2009 WL 3327227, at *2 (W.D. Wash. Oct. 8, 2009) (quoting *Estate of Manship v. U.S.*, 232 F.R.D. 552, 555 (M.D. La. 2005)) (internal quotation marks omitted). Conversely, subparts are considered discrete when the second question is fully independent of the first:

> Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the subsequent question stand alone? Is it independent of the first question?

*Kendall v. GES Exposition Servs.*, 174 F.R.D. 684, 685 (D. Nev. 1997).

As explained below, the Court has counted Plaintiffs' interrogatories under the guidance of these general principles and concludes that Plaintiffs' interrogatories to Defendant McCall alone exceed the Court-ordered limit of fifty. Notably, however, Defendant asserts that Plaintiffs have also submitted requests to other individual defendants. *See doc. 77* at 15 ("At the same time that Plaintiffs propounded their requests to Chief McCall, they sent requests to Defendant J.J. Murphy."), *doc. 45*, *doc. 46*. It appears that, at least in the case of Defendant J.J. Murphy, these requests included interrogatories. *See doc 46* ("Plaintiffs' First Set of Interrogatories to Defendant City Manager J.J. Murphy" sent on August 10, 2018). The scheduling order in this case limits

4

interrogatories to fifty *per side* to serve or notice on the *other side*. Doc. 26 at 1. Therefore, Plaintiffs' interrogatories to any Defendant are counted and must not exceed fifty.

Interrogatory No. 1

By the Court's count, Interrogatory No. 1 contains three (3) discrete questions.

Subpart (a) is directed at evaluations "to improve the working environment as it relates to minority communities." *Doc. 72*, Ex. 5 at 2. This is thematically distinct from the other questions, which ask about racially derogatory remarks.

Subparts (b), (c), and (d) inquire about HPD's policies and procedures regarding racially derogatory remarks and ask for information about any discipline of HPD officers for violation of such policies.

Subparts (e) and (f) ask Defendant McCall about his individual conduct, including whether Defendant McCall has ever used derogatory remarks/conduct (regardless of whether he was disciplined for it—indeed, this question is not specifically limited to the workplace). While related to the broader theme of racially derogatory remarks, subparts (f) and more particularly (e) diverge from the focus on HPD's policies and procedures, and so constitute a discrete area of inquiry.

Interrogatory No. 2

Because all questions within Interrogatory No. 2 are directed at a common theme (HPD's affirmative action plan), it is counted as a single interrogatory.

5

Interrogatory No. 3

Because all questions within Interrogatory No. 3 are directed at a common theme (a COMSTAT-like program requiring the presence of reasonable suspicion and probable cause for every detention), it is counted as a single interrogatory.

Interrogatory No. 4

The Court counts Interrogatory No. 4 as two (2) separate interrogatories. Subparts (a) and (b) are directed at eliciting information about HPD's statistics analyzing arrest and charging practices.[2] Subpart (c) asks what measures Defendant McCall has taken as Chief of Police to ensure that HPD officers' arrest or charging practices do not negatively impact minority communities in Hobbs. This subpart, which has nothing to do with analyzing statistics or data, is thematically separate from subparts (a) and (b), can be fully answered without reference to subparts (a) and (b), and must therefore be counted separately.

Interrogatory No. 5

By the Court's count, Interrogatory No. 5 contains forty-five (45) discrete inquiries that will be counted as separate interrogatories.

---

[2] Subpart (a) asks for documents dating back to June of 2001. Though the Court does not rule here on any of Defendant's objections except numerosity, it is skeptical about the relevance and proportionality of discovery requests focused on information from more than a year prior to the employment of Plaintiffs.

Subpart (a) inquires about Internal Affairs ("IA") investigations from 2008–2012 concerning HPD policies with a negative impact on minority communities, and is counted as one interrogatory.[3]

Subpart (b) asks Defendant McCall to identify any Internal Affairs ("IA") investigations and files, final reports, and summary of evidence related to thirty-two separately listed employees. Because subpart (b) asks about "any" such investigations and lacks a common theme tying the IA records of these thirty-two employees together, the Court counts it as thirty-two (32) separate interrogatories.

Subparts (c) and (d) inquire about discipline of HPD officers for using the "N-word" or other racial epithets.

Subpart (e) asks why Plaintiff Ellis was not provided with *Garrity* warnings during an IA investigation, a topic wholly separate from any other in Interrogatory No. 5.

Subpart (f) asks about discipline of officers for making quota-based detentions or arrests, a topic wholly separate from any other in Interrogatory No. 5.

---

[3] Though the Court does not here rule on any of Defendant's objections except numerosity, it has serious concerns about subpart (a)'s overbreadth and vagueness in asking for "any" IA investigations and files concerning "any" policies having a "negative impact on minority communities." *See, e.g.*, *Burget v. Capital W. Secs., Inc.*, 2010 WL 11508643, at *2 (W.D. Okla. Mar. 30, 2010) ("Because defendant's interrogatories and requests for production call for 'each and every' or 'any and all' item of evidence, the Court finds these discovery requests are not reasonably calculated to lead to the discovery of relevant evidence because they request items which may be wholly unrelated to a claim or defense in this case.").

Subpart (h) asks why Plaintiff Ellis did not receive an exit interview, a topic wholly separate from any other in Interrogatory No. 5.

Subpart (g) and subparts (i) through (o) each address whether complaints were made against a specific officer in a specific instance. Every one of these subparts elicits information about a factually distinct subject area and can be fully answered without reference to any other subpart. Therefore, each is counted as a separate interrogatory for a total of eight (8) interrogatories.

As of Interrogatory No. 5 (and not counting any additional interrogatories served on other defendants), Plaintiffs have already exceeded their limit of fifty. For instructive purposes, however, the Court will continue to count the remainder of the interrogatories.

Interrogatory No. 6

Because all questions within Interrogatory No. 6 are directed at a common theme (the "Training Officer" program to review complaints of police misconduct), it is counted as a single interrogatory.

Interrogatory No. 7

Because all questions within Interrogatory No. 7 are directed at a common theme ("Cultural Diversity" training), it is counted as a single interrogatory.

Interrogatory No. 8

The Court identifies several interrogatories within Interrogatory No. 8, though the divisions are not precisely consistent with the divisions between subparts.

One common theme is the knowledge of various individuals (specifically Officer Brendan Ast, Officer Robert Hammer, Officer Crystal Marin, Officer Herndon; Lieutenant Chad Wright; Jeremy Kirk; and Jeremey Shimer) about the supervision of Plaintiffs. These questions constitute one interrogatory.

A factually distinct area of inquiry is Jeremy Shimer's knowledge of the supervision of Defendant Jeremey Kirk. This is a freestanding question that can be fully answered without reference to various individuals' knowledge of *Plaintiffs*' supervision, and therefore is not tied to that line of questions by a sufficiently common theme.

The portion of subpart (b) requesting Defendant to identify all records related to Lieutenant Chad Wright's eligibility to oversee the Field Training Program counts as a single, distinct interrogatory.

Another distinct area of inquiry involves the formal eligibility criteria for training instructors/Field Training Officers ("FTOs"), contained in subpart (a), and the eligibility of particular FTOs. Because this same question is asked twice with respect to Jeremy Kirk and Jeremy Shimer, the Court counts these questions only as they are contained in subpart (e). As currently written, it is unclear whether subpart (e) should be construed as one interrogatory or as thirty-three (33) separate interrogatories. If the thirty-two

9

listed individuals are members of the class of "any Field Training Officer who supervised or trained Plaintiffs," then the subpart elicits information about a common theme and should be counted as a single interrogatory. If, however, the thirty-two listed individuals are not Field Training Officers who supervised or trained Plaintiffs, then the subpart lacks a common theme and the request for records about each individual, as well as the request for records related to any Field Training Officer who supervised or trained Plaintiffs, must be counted separately for a total of thirty-three interrogatories. Plaintiffs are advised to clarify this question in their amended interrogatories.

Depending on the construction of subpart (e), therefore, Interrogatory No. 8 must be counted as either four (4) or thirty-six (36) separate interrogatories.

<u>Interrogatory No. 9</u>

Interrogatory No. 9 nominally relates to the systematic analysis that the 2001 Stipulated Agreement required HPD to conduct, on a quarterly basis, for each officer. Plaintiff alleges that this analysis was supposed to include statistics by race in uses of force, field contacts, detentions, searches, and citizen's complaints, use of racial epithets, and other indicators of possible racial bias.

Subpart (a) does not directly relate to this systematic analysis. It asks Defendant to identify "any data" showing evidence of racial bias by either the Chief of Police or the City Manager from 2001 to 2018. This question is not limited to any particular kind

10

of data, nor is it related to the "systematic analysis on a quarterly basis for each officer," since the Chief of Police and City Manager are not officers. Owing to the lack of a common theme to tie these two questions to one another or any of the other subparts, they constitute two (2) distinct interrogatories.

Subparts (b) and (c) both appear to relate to the systematic analysis and review of each officer mandated by the Stipulated Agreement. These questions ask for any documents, for any HPD officer, relating to these reviews. Because they elicit information about a common theme, they are counted as one interrogatory.

Subpart (d) inquires whether Defendant McCall, as Chief of Police, has conducted a systematic analysis of each officer to detect racial bias trends. Such an analysis could be, but is not necessarily, related to the kind of systematic analysis mandated by the Stipulated Agreement. Accordingly, as written, subpart (d) constitutes a separate interrogatory, bringing Interrogatory No. 9 to a total of four (4) separate interrogatories.

Interrogatory No. 10

Because all questions within Interrogatory No. 10 are directed at a common theme (the independent monitor/mediator intended to assist in carrying out the Stipulated Agreement), it is counted as a single interrogatory.

Interrogatory No. 11

Throughout several subparts, Interrogatory No. 11 asks Defendant McCall to identify whether certain named individuals currently working for HPD are the same individuals mentioned in a particular set of data compiled from 2001–2002 and cited in a 2004 Memorandum Opinion and Order.[4]  Plaintiffs then inquire about what remedial actions were taken in response to the conduct of those individuals.  Subpart (c) asks Defendant to identify any documents concerning this data that show evidence of conduct with a disparate racial impact.  Assuming that subpart (c) refers to the referenced set of data only, these questions all elicit details about a common theme (the set of data compiled from 2001–2002) and are properly counted as one interrogatory.

Subpart (f) asks Defendant to identify any documents where Defendant was disciplined for use of force, citizen complaints, any violations of the Stipulated Agreement, or HPD policy.  Because this subpart is unlimited in scope or time and therefore insufficiently related to the aforementioned data set, it must be separately counted.  Therefore, the Court concludes that Interrogatory No. 11 contains two (2) separate interrogatories.

---

[4] The Court reiterates that, while it reserves ruling on the issue at this time, information and documents dating back to 2001–2002, or 2004 for that matter, are very unlikely to be discoverable.

Interrogatory No. 12

Because all questions within Interrogatory No. 12 are directed at a common theme (meetings between Defendant McCall and the NAACP) it is counted as a single interrogatory.

Interrogatory No. 13

Because all questions within Interrogatory No. 12 are directed at a common theme (the hiring and employment history of a single officer, Rodney Porter) it is counted as a single interrogatory.

**II.     Requests for Production**

Because many of Plaintiffs' requests for production rely explicitly on Defendant McCall's answers to the interrogatories, *see generally doc. 72-6*, the Court reserves ruling on any of Defendant McCall's objections to the requests for production until Plaintiffs have submitted their amended interrogatories. The Court reiterates, however, that Plaintiffs are limited to fifty (50) requests for production to serve on all defendants collectively.

**III.    Conclusion**

For the foregoing reasons, the Court concludes that Plaintiffs' interrogatories directed to Defendant McCall exceed the Court-ordered limit of fifty, and reserves ruling on Defendant's other objections. Because Defendants raised a valid objection

13

(numerosity) to answering Plaintiffs' interrogatories, Plaintiff's Motion to Compel Chief Christopher McCall's Responses to Written Discovery (*doc. 67*) is hereby DENIED. Plaintiffs are directed to amend and propound again their interrogatories (and related requests for production) keeping in mind the numerical limit of fifty per side. Should any Defendant object to the amended discovery requests, they must again notify Plaintiffs of their objections. Defendants are reminded of the requirement that such objections "be stated with specificity" and not boilerplate. FED. R. CIV. P. 33(b)(4).

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE