**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BRANDON ELLIS, *et al.*,

      Plaintiffs,

v.                                    Civ. No. 17-1011 WJ/GBW

HOBBS POLICE DEPARTMENT, *et al.*,

      Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL

THIS MATTER comes before the Court on Plaintiffs' Motion to Compel Chief Christopher McCall's Answers to Interrogatories and Related Production of Documents. *Doc. 131*. Plaintiffs filed their Motion on May 10, 2019. *Id.* Defendants responded on June 6, 2019 (*doc. 138*), and Plaintiffs replied on June 20, 2019 (*doc. 140*). Having reviewed the Motion and the attendant briefing, the Court will GRANT IN PART and DENY IN PART Plaintiffs' Motion to Compel, for the reasons stated below.

### I.    LEGAL STANDARD

In large part, the instant dispute between Plaintiffs and Defendants turns on whether the requested information is discoverable. Federal Rule of Civil Procedure 26(b) outlines the general legal standard for discoverability:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case*, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (2015) (emphasis added). In order to be discoverable, therefore, material must be both relevant and proportional to the needs of the case. Information "need not be admissible in evidence to be discoverable." *Id*. However, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

Defendants object to Plaintiffs' discovery requests on six general grounds: relevance, proportionality, confidentiality, violation of a collective bargaining agreement, vagueness, and overbreadth.[1] *See generally doc. 131-1*. The Court will address each general category of objection in turn.[2]

## II.    RELEVANCE AND PROPORTIONALITY OBJECTIONS

Defendants object to Interrogatories No. 1, 4, 5, 6, 8, 13, 14, 15, 16, 17, and 18 on the basis of "Relevance and Proportionality," arguing that Plaintiffs have requested information from time periods not relevant to their claims. Some of these

---

[1] Defendant McCall also objected to Interrogatory No. 12 on the ground that it "asks him to speculate." *See doc. 131-1* at 61. However, as noted by Plaintiffs, *see doc. 131* at 6 n.1, Defendant provided an answer. Because Plaintiffs have expressed no dissatisfaction with that answer nor presented any related argument in their Motion to Compel, the Court does not consider Interrogatory No. 12.

[2] Because Plaintiffs' disputed requests for production "seek only the records cited in response to the interrogatories," *doc. 131* at 10, the Court will only specifically address Plaintiffs' interrogatories except where separate analyses are required.

interrogatories relate specifically to a prior civil rights case involving the Hobbs Police Department ("HPD"), while others simply encompass a time period outside of what Defendants believe to be relevant.

A. **Appropriate Scope of Discovery Generally**

Approximately twenty years ago, the City of Hobbs was involved in a civil rights suit based on the allegedly discriminatory actions of HPD. *See Johnson, et al. v. Hobbs City of, et al.*, No. 6:99-cv-0348 MV/DJS. The allegations involved events which occurred between April 1996 and November 1999. *See id*. (*doc. 59*). The class of plaintiffs was comprised of all African-American citizens residing in Hobbs, New Mexico between March 29, 1999 and June 10, 2001. *See id*. (*doc. 123*). On June 21, 2001, the parties reached a Stipulated Agreement Resolving All Class and Individual Claims for Injunctive Relief. *Id*. (*doc. 123*) (hereinafter "Stipulated Agreement"). The Stipulated Agreement mandated certain actions on the part of HPD to remedy and prevent racial discrimination in policing. The Court retained jurisdiction for several years in order to ensure compliance. On February 23, 2007, the Court entered a Stipulated Order of Dismissal With Prejudice, noting that the term of the Stipulated Agreement had expired. *Id*. (*doc. 278*). Indeed, all parties agree that the Stipulated Agreement ended at this time. *See doc. 131* at 6; *doc. 138* at 9.

Plaintiffs' Complaint contains three claims: (1) retaliation for whistleblowing in violation of the New Mexico Whistleblower Protection Act, (2) retaliation for protected

speech and association in violation of the First Amendment and 42 U.S.C. § 1983, and

(3) racial discrimination and deprivation of due process in violation of the Fourteenth

Amendment, 42 U.S.C. § 1981 and § 1983. *See doc. 1* at 15–20. Each of these claims

relates directly to employment actions taken by HPD against Plaintiffs. Plaintiff

Brandon Ellis began his employment with HPD on July 20, 2012. *See doc. 77* at 2.

Plaintiff Vasshawn Robinson began his employment with HPD on September 1, 2015.

*Id*. Plaintiff Jeremy Artis began his employment with HPD on September 29, 2015. *Id*.

Therefore, the earliest of Plaintiffs' claims relate to matters more than five years after the

Stipulated Agreement was terminated. In fact, it appears likely that the events giving

rise to Plaintiff Ellis' claims may not have occurred until several years later.

Unfortunately, the Complaint does not assign dates to many of the specific events

described. *See generally doc. 1*. However, in a review of the docket, the earliest

allegation related to any Plaintiff involved the conduct of dispatchers in January 2015

toward Plaintiff Ellis. *See doc. 22* at 8. Moreover, claims that involve Plaintiffs Robinson

and Artis relate to matters more than eight after the Stipulated Agreement was

terminated. It is also notable that the longest applicable statute of limitation—four

years for § 1981 claims[3]—creates a liability period back only until October 2013. Many

---

[3] *See Jones v. R.R. Donnelly and Sons Co.*, 541 U.S. 369, 382 (2004). The New Mexico Whistleblower
Protection Act has a statute of limitation of two years from the date on which the retaliatory action
occurred. N.M. Stat. § 10-16C-6 (2010). The First Amendment retaliation claim has a three-year statute of
limitation. *See Wilson v. Garcia*, 471 U.S. 261 (1985); N.M. Stat. § 37-1-8 (1978).

of the disputed discovery requests seek materials created as a result of the Stipulated

Agreement which would reach back into June 2001.  Consequently, Plaintiffs seek

discovery from eleven years before Plaintiff Ellis' hiring, from twelve years before the

liability period, and from more than fifteen years before the hiring of Plaintiffs

Robinson and Artis.

In support of this long reach into the past, Plaintiffs make a number of

arguments.  First, they cite *Heward v. Western Electric Co.*, 1984 WL 15666, at *6 (10th Cir.

Jul. 3, 1984) (unpublished) (quoting *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th

Cir. 1978)), for the proposition that the scope of discovery in cases of alleged

discrimination can be "extensive" where the evidence sought is "*particularly cogent*"

(emphasis in original) to the plaintiff's claims.  However, courts regularly limit the

temporal scope of discovery, even in discrimination cases, to a few years before or after

the challenged action or period of liability.  *See, e.g., Benney v. Midwest Health, Inc.*, 2018

WL 6042591, at *2 (D. Kan. Nov. 19, 2018) (unpublished) (limiting discovery request

about prior claims to the period of the plaintiff's employment, beginning two years

before the challenged employment action); *Horizon Holdings v. Genmar Holdings*, 209

F.R.D. 208, 212 (D. Kan. 2002) (collecting cases; limiting discovery scope to two years

before and after the alleged discriminatory conduct).  Indeed, in *James v. Newspaper

Agency Corp.*, 591 F.2d 579, 582–83 (10th Cir. 1979), a case involving employment sex

discrimination claims, the Tenth Circuit found that the trial court's limitation of

discovery to a four-year time period was reasonable even though the plaintiff's employment had begun prior to that period. Even where courts have described the discovery they are permitting as "broad," that discovery has not entailed the temporal scope sought by Plaintiffs. *See*, *e.g.*, *Flanagan v. ScriptPro, LLC*, U.S. Dist. LEXIS 107464, at *10–11 (D. Kan. June 27, 2018) (unpublished) (allowing "broad" discovery which included the time period two years before and two years after the plaintiff's termination); *EEOC v. BOK Fin. Corp.*, 2013 WL 12047029, at *12 (D.N.M. Jan. 25, 2013) (unpublished) (because the "federal rules contemplate broad discovery," the court permitted discovery requests relating to matters from three years before, and two years after, the liability period in an employment discrimination case). While the Court agrees that, in the context of employment discrimination cases, information before and after the liability period may be relevant and discoverable, such discovery would not ordinarily reach more than five, let alone twelve, years into the past. Such material will rarely be sufficiently relevant and proportional within the meaning of Rule 26.

Plaintiffs argue that information and documents related to the *Johnson* case are relevant to their present claims because "a department-sanctioned history of discriminatory law enforcement in the face of civil rights lawsuits, evidenced by records created and kept in response to the stipulated agreement in *Johnson*, is probative of discriminatory intent, which is required to proceed on Plaintiffs' equal protection claim." *Doc. 131* at 10. Of course, as Defendants have argued, Plaintiffs' claims are

based on employment discrimination and retaliation, not discriminatory policing, so they are conceptually distinct from the claims in *Johnson*. Moreover, as noted above, there is a decided lack of temporal proximity between the instant claims and the discovery sought based on the Stipulated Agreement. Certainly, the Court agrees that establishing racism in one context can relevant to establishing racism in other contexts. In this context, "stray remarks by decision-makers, which were unrelated to the decision-making process [even if] made temporally remote from the date of the decision … could provide background evidence that may be critical to a jury's determination of whether the decision-maker was more likely than not acting out of a discriminatory motive." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 368 (3d Cir. 2008). However, generally speaking, the discovery sought based on the Stipulated Agreement is not focused on the independent actions or remarks of the decisionmakers relevant in the instant case. Instead, it primarily seeks the materials and data created to comply with the Stipulated Agreement. Given this fact along with the conceptual and temporal dissimilarities between the *Johnson* information and the disputes in this case, the discovery sought based on the Stipulated Agreement is so marginally relevant on the issue of intent that the related discovery requests are generally not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Next, Plaintiffs argue that *Johnson*-related material is important for their whistleblower claims. *See doc. 131* at 10–11. Indeed, protection for whistleblowers

under New Mexico law is premised on the existence of an "unlawful or improper act." *See* N.M. Stat. § 10-16C-3 (2010). However, Plaintiffs' whistleblower claims are based on claims that they observed racially discriminatory policing during their time as HPD officers. Thus, they must show that HPD engaged in racially discriminatory policing during the period of Plaintiffs' employment. It is neither necessary nor sufficient for them to prove discriminatory policing prior to their employment. Without question, some of the categories of information sought by Plaintiffs would be discoverable if directed at relevant time periods. However, the Court cannot agree that the remedial actions taken up until 2007 for alleged racially discriminatory policing in 1996–1999 are "critical," *see doc. 131* at 11, to establishing the unlawfulness or impropriety of HPD's actions beginning in 2012. Nor have Plaintiffs demonstrated that information and materials related to *Johnson* are necessary to establishing Plaintiff's good faith in reporting HPD's activities. Finally, the Court does not see why temporally remote evidence would be necessary in order to establish that racially discriminatory policing is a "matter of public concern" for purposes of New Mexico whistleblower law or the First Amendment, *see doc. 140* at 3. The public concern of such unlawful actions, if Plaintiffs' allegations prove true, is evident on its face.

Next, Plaintiffs argue that information and documents associated with the *Johnson* case and the Stipulated Agreement are relevant because they are "necessary" to prove municipal liability because they must show the existence of a municipal policy or

custom.[4]  Indeed, to prevail against the municipality, Plaintiffs must establish that "an unconstitutional city-wide custom was the 'moving force' behind their injuries under the First and Fourteenth Amendments."  *Doc. 131* at 12 (citation omitted).  However, Plaintiffs are focused on the wrong policy/custom.  As noted above, Plaintiffs' claims are based upon allegations of improper employment actions taken against them—racial discrimination and retaliation.  To prove these claims, they must show that the discrimination and retaliation against them was the result of a municipal policy or custom.[5]  It would not be necessary or sufficient for them to establish a policy/custom of discriminatory policing.  This logic is true even for their whistleblower claims.  It does not advance their municipal liability claim to show that they were whistleblowers about an unlawful policy.[6]  They must show a policy/custom of retaliating against whistleblowers.[7]  Consequently, the *Johnson*-related discovery is not sufficiently

---

[4] Plaintiffs and Defendants disagree about whether Plaintiffs have asserted municipal liability claims against the City of Hobbs in this case.  *See doc. 138* at 2, 10; *doc. 140* at 1.  Though it is not necessary to decide the issue for purposes of Plaintiffs' Motion to Compel, the Court notes that, as cited by Plaintiffs, "[a section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."  *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (quoting *Watson v. City of Kan. City*, 857 F.2d 690, 695 (10th Cir. 1988)).  Plaintiffs have sued all individual defendants, including Defendant McCall, in their official and individual capacities.  *See generally doc. 1.*  HPD itself is also named as a party.  *See id.*  For purposes of this Motion to Compel, therefore, the Court assumes that Plaintiffs have asserted municipal liability claims under § 1983.

[5] Municipal liability can also be established by showing the constitutional violation was the decision of an official with final policymaking authority.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

[6] Of course, to establish any liability, Plaintiffs must show the "unlawful or improper act" which could include a practice or procedure.  *See* N.M. Stat. § 10-16C-3 (2010).  But, as noted above, based upon Plaintiffs' allegations, the racially discriminatory policing about which they communicated occurred during their employment.

[7] *See supra* note 5.

relevant to be proportional discovery for establishing Plaintiffs' municipal liability claims.

Finally, Plaintiffs argue that *Johnson*-related discovery is relevant to establishing punitive damages against the individual Defendants because it will show that their conduct was "reprehensible": specifically, that it "involved repeated actions" rather than being an "isolated incident." *Doc. 131* at 13 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003). Indeed, discovery focused on prior instances of racially discriminatory conduct by the named Defendants would be relevant on whether they should be subject to punitive damages. However, most of the disputed discovery requests seeking information related to the Stipulated Agreement are not focused on the prior conduct of named Defendants. They seek broad swathes of information across the entire Department. In those circumstances, the discovery sought is not sufficiently relevant to be proportional discovery for establishing Plaintiffs' punitive damages claims.

### B. <u>Interrogatories No. 1, 4, 5, 13, 14 and 17</u>

Based on the foregoing, the Court determines that discovery requests that seek materials created to comply with the Stipulated Agreement while it was in effect are insufficiently relevant to be proportional to the needs of the case. As written, Interrogatories No. 1, 4, 5, 13, 14 and 17 seek such information. Therefore, as it relates to those interrogatories and related requests for production, Defendants' objections based

upon relevance and proportionality are sustained and Plaintiffs' Motion to Compel is DENIED.

### C. Interrogatories No. 6, 8, 15, 16

Although Interrogatories No. 6, 8, 15, and 16 refer to the Stipulated Agreement and/or obligations thereunder, they must be addressed separately.

Interrogatory No. 6 seeks to identify "all documents generated and/or reviewed by HPD to analyze responsive arrest and charging data from January 2008 to January 2019, including any document created by HPD senior staff to ensure that officers were not engaging in arrest and charging practices that had a disparate and/or negative impact on minority communities in Hobbs." *Doc. 131-1* at 35. Earlier in the interrogatory, the Stipulated Agreement is referenced because it created an obligation "to develop procedures that required senior staff to analyze arrest and charging information on a quarterly, cumulative basis to detect trends in arrests and charging practices." *Id*. Nonetheless, the Stipulated Agreement was no longer in effect by January 2008, so the request is not technically seeking information related to compliance. In fact, given the expiration of the Stipulated Agreement, HPD may not have continued to produce the analyses described in Interrogatory No. 6. If the analyses continued and the documents exist, the information would be relevant and discoverable if more temporally limited. To the extent that Interrogatory No. 6 seeks

information outside of July 2012–January 2019, Defendants' objection based upon relevance and proportionality is sustained. Otherwise, it is overruled.[8]

Interrogatory No. 8 seeks to identify "every internal affairs investigation since January 2008 concerning any HPD quotas, policies, and procedures that HPD identified as potentially implicating the race-driven policing provisions of the Stipulated Agreement…." *Id*. at 48. As noted above, the Stipulated Agreement was no longer in effect by January 2008, so the request is not technically seeking information related to compliance. As written, the request appears to seek a null set given that, arguably, no investigation after February 2007 could implicate the expired Stipulated Agreement. Perhaps Plaintiffs intended to request post-2007 investigations which would have implicated the Stipulated Agreement if it had been still in effect. Regardless, the Court will not rewrite their interrogatory. Moreover, even if interpreted in that fashion, the interrogatory would seek information which extends more than five years before the liability period. As with the interrogatories focused on compliance with the Stipulated Agreement, this request goes beyond the temporal limits of discovery which would be proportional to the needs of the case. Therefore, as to Interrogatory No. 8 and related request for production, Defendants' objections based upon relevance and proportionality are sustained and Plaintiffs' Motion to Compel is DENIED.

---

[8] Defendants' other objections to this request will be addressed below.

Interrogatory No. 15 notes that the Stipulated Agreement required HPD to "establish formal eligibility criteria for training instructors and FTOs" and seeks to identify "(a) all criteria established in response to this provision of the Stipulated Agreement; (b) all trainers or FTOs since the provision took effect that met the required criteria; (c) all trainers or FTOs that did not meet the required criteria; (d) all records related to the FTO/training eligibility of Jeremy Kirk, Jeremy Shimer, Brendan Ast, Robert Hammer, Crystal Marin, and Officer Herndon." *Id*. at 78. By its terms, subsection (a) seeks information focused on past compliance with the Stipulated Agreement. As noted above, given the expiration of the Stipulated Agreement, it is possible that HPD no longer has formal eligibility criteria for training instructors and FTOs. However, whether or not such eligibility criteria were in effect since July 2012, and if so what they were, would be relevant and discoverable. To the extent that Interrogatory No. 15(a)–(c) seeks information outside of July 2012–January 2019, Defendants' objection based upon relevance and proportionality is sustained. Otherwise, it is overruled.[9] As there is no showing from Plaintiffs regarding the relevance of subsection (d), Defendants' objection based upon relevance and proportionality to that subsection is sustained and Plaintiffs' Motion to Compel is DENIED as to Interrogatory No. 15(d).

---

[9] Defendants' other objections to this request will be addressed below.

Interrogatory No. 16 seeks to identify "the existence of all documents and data created and/or reviewed pursuant to the discrete requirements of Section X of the Stipulated Agreement." *Id*. at 81. However, as with Interrogatory No. 8, Plaintiffs seek this information since January 2008, or after the expiration of the Stipulated Agreement. As written, the request appears to seek a null set given that, arguably, no documents after February 2007 could be created pursuant to the discrete requirements of the expired Stipulated Agreement. Perhaps Plaintiffs intended to request post-2007 documents which would have been required by the Stipulated Agreement if it had been still in effect. Regardless, the Court will not rewrite their interrogatory. Moreover, even if interpreted in that fashion, the interrogatory would seek information which extends more than five years before the liability period. As with the interrogatories focused on compliance with the Stipulated Agreement, this request goes beyond the temporal limits of discovery which would be proportional to the needs of the case. Therefore, as to Interrogatory No. 16 and related request for production, Defendants' objections based upon relevance and proportionality are sustained and Plaintiffs' Motion to Compel is DENIED.

**D. <u>Interrogatory No. 2</u>**

Interrogatory No. 2 asks Defendant McCall to identify "every instance in which you have personally made any racially derogatory remark or engaged in any racially derogatory conduct during your tenure as an HPD officer." *Id*. at 12. While obviously

not related to the Stipulated Agreement, Defendant McCall objected to Interrogatory No. 2 in part on grounds of temporal relevance. The information sought extends back to 1999 when Defendant McCall was hired as an HPD officer. Given the centrality of allegations of racism to Plaintiffs' claim, the fact that Defendant McCall was Chief of Police throughout Plaintiffs' employment, and the limitation to the time period within which Defendant McCall was an officer, the Court concludes that the interrogatory seeks relevant information. Moreover, requiring Defendant McCall to make a reasonable effort to recall any such matters is not disproportionate to its relevance. Therefore, as to Interrogatory No. 2, Defendants' objection based upon relevance and proportionality is overruled.[10]

### E. **Interrogatory No. 18**

Interrogatory No. 18 relates to a June 2004 Order from United States District Judge Martha Vasquez in the *Johnson* case. *See Johnson*, No. 6:99-cv-0348 MV/DJS (*doc. 190*). The Order included findings "that certain HPD officers may have engaged in patterns of conduct that have a disparate impact on class-members and other minority citizens." *Id*. Only one of the officers mentioned in the Order is a defendant in the instant case. While it is not entirely clear the date range from which the statistics are drawn, it certainly predates June 2004.

---

[10] To the extent that it is distinct, the overbreadth objection is also overruled.

Interrogatory No. 18(e) asks for the identification "by author, date of creation, and subject matter all documents in HPD's possession, custody, or control, that support Judge Vasquez's findings in the Court's 2004 Order." *Doc. 131-1* at 95–96. In addition to imposing on Defendants the task of determining what documents might "support" the numerous findings in an order against which they argued, it seeks substantial discovery from a time period at least eight years before any Plaintiff was employed by HPD. As with the interrogatories focused on compliance with the Stipulated Agreement, this request goes beyond the temporal limits of discovery which would be proportional to the needs of the case. Therefore, as to Interrogatory No. 18(e) and related request for production, Defendants' objections based upon relevance and proportionality are sustained and Plaintiffs' Motion to Compel is DENIED.

Interrogatory 18(a)–(d) make more straightforward and less onerous requests. They seek to tie Defendant McCall and two high ranking HPD officers to particular findings in the Order. Given the centrality of allegations of racism to Plaintiffs' claims, the importance of these officers' positions, and the relative ease of answering, the Court concludes that these subsections seek relevant information which are proportional to the needs of the case. Therefore, as to Interrogatory No. 18(a)–(d), Defendants' objection based upon relevance and proportionality is overruled.[11]

---

[11] Defendants' other objections to these requests will be addressed below.

With respect to the interrogatories on which the Court has, in part or in whole, overruled the relevance and proportionality objections, as well as those to which no such objection was made, the Court will now address the other objections made against them. This list includes Interrogatories No. 2, 3, 6, 7, 9, 10, 15(a)–(c), 18(a)–(d), and 19.

## III.    CONFIDENTIALITY

Defendants objected to Interrogatories No. 3, 6, 9, 10, and 18(a)–(d)[12] on the basis of confidentiality. The confidentiality-related objections can be divided into two general grounds: confidential information of non-parties and HPD's collective bargaining agreement.

### A.  Confidential Information of Non-Parties

Generally speaking, information that is merely confidential (as opposed to privileged) is discoverable so long as it is relevant and proportional to the needs of the case. *See* Fed. R. 26(b)(1) ("parties may obtain discovery regarding *any* nonprivileged matter that is relevant…and proportional…") (emphasis added). As summarized by one court:

> It is well settled that confidentiality does not act as a bar to discovery and is not grounds to withhold documents or information from discovery. "A concern for protecting confidentiality does not equate to privilege." While a confidentiality objection may be appropriate when a party seeks a protective order limiting the parties' use or disclosure of confidential

---

[12] Defendants also objected to Interrogatories No. 1, 8, 16, and 18(e) on confidentiality grounds. However, the Court has denied the Motion to Compel as to those requests above on other grounds.

information, it is generally not a valid objection to withholding discovery altogether.

*Benney*, 2018 WL 6042591, at \*5 (quoting *High Point SARL v. Spring Nextel Corp.*, 2011 WL 4008009, at \*1 (D. Kan. Sept. 9, 2011)).  However, "it is not unreasonable to be cautious" about ordering the disclosure of sensitive personnel information.  *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648–49 (10th Cir. 2008).  To that end, "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied[.]"  *Id.* (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).  Indeed, neither of the cases cited by Defendants to support the confidentiality objections requires more than a careful consideration of relevance by the Court.  *See Dooley v. Recreation and Parks Commission for the Parish of East Baton Rouge*, 2009 WL 1939022, at \*4 (M.D. La. July 6, 2009) (unpublished) (denying motion to compel disclosure of information pertaining to third parties "[b]ecause it does not appear that the requested information is relevant to plaintiff's claims"); *Betzer v. Stephens*, 2003 WL 22175993, at \*4 (E.D. La. Sept. 19, 2003) (unpublished) (denying motion to compel disclosure of non-defendant officers' personnel files because they were "not reasonably related to any claim, issue, or defense").

Although Plaintiffs' Motion to Compel additionally includes a discussion of constitutional privacy rights, *see doc. 131* at 13–15, Defendants do not argue that any constitutional right to privacy in third-party personnel files exists here.  *See doc. 138* at 10–12.  In any case, the Court agrees with Plaintiffs that no such constitutional concerns

apply. Even where a legitimate expectation of privacy exists, "the right may be overridden by a compelling state interest," including "ascertainment of the truth" in court. *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1981); *see also Flanagan v. Munger*, 890 F.2d 1557, 1570–71 (10th Cir. 1989) (quoting *Lichtenstein*, 60 F.2d at 435) (documents relating "simply to [] officers' work as police officers," including reprimands for off-duty conduct, merit no legitimate expectation of privacy). Therefore, where Plaintiffs' discovery requests are relevant and proportional to the needs of the case, and not otherwise privileged, the Court finds no constitutional bar to disclosure, particularly as Defendants have not argued otherwise. *See McDonald v. Wise*, 769 F.3d 1202, 1217 (10th Cir. 2014) (in the context of discovery requests involving police officer personnel files, noting that the plaintiff "cites no constitutional case law and provides no analysis in an effort to bring himself within the parameters of the Fourteenth Amendment's right to privacy, and we decline to do it for him").

Accordingly, unless a discovery request seeks information that is not relevant, is not proportional to the needs of the case, or is otherwise undiscoverable, the request shall not be denied merely because it seeks disclosure of confidential third-party information. Should Defendants find it necessary to do so, they may file a motion for protective order under Rule 26(c). *See* Fed. R. Civ. P. 26(c).

**B. <u>Collective Bargaining Agreement</u>**

Defendants also objected to any discovery requests seeking confidential information about non-party HPD officers on the ground that disclosure would violate HPD's collective bargaining agreement, which states: "Internal Affairs investigations and reports are the confidential property of the Police Department for internal use only and will not be released from the custody of the department to anyone." *Doc. 138* at 11.

In support of this position, Defendants cite *Range v. Brubaker*, 2008 WL 5249004, at *1–2 (N.D. Ind. Dec. 16, 2008) (unpublished). In *Range*, the court found that the defendant was not subject to sanctions for initially refusing to answer the plaintiff's discovery requests, pursuant to a collective bargaining agreement prohibiting production of internal affairs records without a court order. The court found that the defendant's conduct was "substantially justified" and did not merit sanctions. *Id*. at *2. However, as Defendants concede, the court ultimately ordered production of the records. At most, *Range* establishes that a valid collective bargaining agreement may excuse a party's refusal to answer discovery requests without a court order. Nothing in that case, or any other point of law cited by Defendants, suggests that a collective bargaining agreement can render information categorically undiscoverable. This is particularly so as Defendants admit that the collective bargaining agreement is "technically expired," without explaining why or how it is "still in force and effect." *See doc. 138* at 11. Therefore, otherwise relevant, proportional, and non-privileged

information and materials will not be protected from discovery on the basis of HPD's collective bargaining agreement.

For the reasons explained above, Defendants' objections to Interrogatories No. 3, 6, 9, 10,[13] and 18(a)–(d) based on confidentiality are overruled.[14]

## IV. OVERBREADTH AND VAGUENESS

Defendants object to Interrogatories No. 3, 6, 7, 9, 15(a)-(c) and 19[15] on the basis that they are either totally unlimited in scope, or unclear in definition. These objections are enumerated under the general headings of "overbreadth" and "vagueness." Parties have a "duty to state discovery requests with 'reasonable particularity.'" *Regan-Touhy*, 526 F.3d at 650 (citing Fed. R. Civ. P. 34(b)(1)(A)). This requirement means that "a discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required[.]'" *Id*. at 649–50 (citing Wright & Miller, 8A Federal Practice and Procedure § 2211, at 415).[16]

---

[13] Without waiving his objections, Defendant McCall provided an answer to Interrogatory No. 10. *See doc. 131-1* at 57–59. He likewise provided an answer to associated Request for Production No. 7, which seeks the production of every document identified in response to Interrogatory No. 10. *See doc. 131-1* at 153–54. Plaintiffs have not indicated that this response was inadequate, leaving no apparent action on the part of Defendant McCall for the Court to compel. However, to the extent it is necessary, Defendant McCall's confidentiality objections are overruled with respect to Interrogatory No. 10.

[14] Defendants' other objections to these requests will be addressed below.

[15] Defendants also objected to Interrogatories No. 4, 5, 8, 13, 14, 15(d), 16, 17 and 18(e) on overbreadth and vagueness grounds. However, the Court has denied the Motion to Compel as to those requests above on other grounds.

[16] The overbreadth objection greatly overlaps with the relevance and proportionality analysis. If not specifically addressed herein, the Court's ruling on the overbreadth objection will mirror its ruling on the relevance and proportionality objection to the same interrogatory.

## A. __Interrogatories No. 3, 7, and 9__

Defendant McCall objects to Interrogatories No. 3, 7, and 9 in part because they are not limited to a particular time period.  Each of these interrogatories seeks information about supervisory actions taken by Defendant McCall within the HPD.  *See doc. 131-1* at 14, 47, 52.  Even if it may not have been explicit in the interrogatories, Plaintiffs have confirmed that these requests are limited to Defendant McCall's tenure as Chief of Police.  *See doc. 131* at 16.[17]  With this limitation, these interrogatories are not temporally overbroad.  Given that Defendant McCall became Chief in 2013,[18] this limitation also greatly diminishes relevance and proportionality concerns.  In fact, the Court finds that the information sought in Interrogatories No. 3 and 9 is relevant and proportional to the needs of the case when limited to Defendant McCall's tenure as Chief of Police.  With this limitation, the overbreadth objection is overruled.

Interrogatory No. 7 asks about "every effort" that Defendant McCall has personally made to ensure that HPD officers were not engaging in arrest or charging practices with a disparate impact on minority communities.  *Doc. 131-1.* at 47.  The Court finds that, as currently written, this language is overly broad.  However, a request for all of Defendant McCall's efforts, as Chief of Police, *specifically directed at*

---

[17] Plaintiffs' motion did not expressly mention Interrogatory No. 9 on this point.  *See doc. 131* at 16.  Nonetheless, given its similarity to Interrogatories No. 3 and 7, the Court infers that Plaintiffs intended a similar limitation on Interrogatory No. 9.

[18] *Hobbs Police Chief Chris McCall Retires After 20 Years of Service*, FOX34 NEWS (Jan. 21, 2019), http://www.fox34.com/story/39826336/hobbs-police-chief-chris-mccall-retires-after-20-years-of-service.

reducing arrest or charging practices with a disparate impact on minority communities would be sufficiently particularized as well as relevant and proportional to the needs of the case. With this limitation, the overbreadth objection is overruled.

B. **Interrogatory No. 19**

Interrogatory No. 19 asks whether Defendant McCall has "ever met" with "any member of the NAACP…or any other person or member of any organization advocating for the quality [sic] of people of color." *Doc. 131-1* at 105. As Defendants point out, this request is not limited to meetings with any particular purpose or in his official capacity. In theory, therefore, it could include personal interactions unrelated to the subject of this lawsuit. In partial recognition of this issue, Plaintiffs have agreed to "limit this interrogatory to Defendant McCall's tenure as Chief." *Doc. 131* at 16. Moreover, Defendant McCall has answered making certain assumptions about the information truly sought by Plaintiffs. In this context, the Court will compel Defendant McCall to answer Interrogatory No. 19 limited to official capacity meetings while he was Chief which were for the purpose of addressing racial issues within the department and community. With this limitation, the overbreadth objection is overruled. If the response already provided by Defendant McCall fully answers Interrogatory No. 19 as limited herein, he may simply provide a verification to that effect.

### C. **Definition of Terms**

With respect to Interrogatories No. 6 and 15 and their associated requests for production, Defendants object on vagueness grounds due to the inclusion of certain terms.  Specifically, in Interrogatory No. 6, Defendants argue that the terms "senior staff" and "other high incidence arrests" are vague.  However, each of these terms are used in the Stipulated Agreement to which HPD agreed to be bound.  While the Stipulated Agreement is no longer in effect, HPD apparently considered those terms sufficiently precise for it to conform its behavior around.  For the purposes of the responses to Plaintiffs' Interrogatory No. 6, Defendants should accord those terms the same meaning as they did when operating under the Stipulated Agreement.  In Interrogatory 15(a)–(c), Defendants object to the term "training officer" as vague.  As an initial matter, the text of the interrogatory does not use "training officer."  Instead it refers to "training instructors," "FTOs," and "trainers."  The terms "training instructors" and "FTOs"[19] are used in the Stipulated Agreement to which HPD agreed to be bound.  While the Agreement is no longer in effect, HPD apparently considered those terms sufficiently precise for it to conform its behavior around.  For the purposes of the responses to Plaintiffs' Interrogatory 15(a)–(c), Defendants should accord those terms the same meaning as they did when operating under the Stipulated Agreement.

---

[19] In the Stipulated Agreement, the acronym "FTO" refers to "Field Training Officer."

Whenever the interrogatory uses the term "trainers," the term will be construed to refer to a person who is either a "training instructor" or an "FTO."

## V.   CONCLUSION

Plaintiffs' Motion to Compel (*doc. 131*) is DENIED with respect to Interrogatories No. 1, 4, 5, 8, 13, 14, 15(d), 16, 17, 18(e) and all associated requests for production.

Plaintiff's Motion to Compel is GRANTED with respect to:

Interrogatory No. 2;

Interrogatory No. 3 limited to Defendant McCall's tenure as Chief of Police;

Interrogatory No. 6 limited to information between July 2012 and January 2019;

Interrogatory No. 7 limited to Defendant McCall's efforts, as Chief of Police, *specifically directed at* reducing arrest or charging practices with a disparate impact on minority communities;

Interrogatory No. 9 limited to Defendant McCall's tenure as Chief of Police;

Interrogatory No. 15(a) limited to the extent that the criteria were in effect between July 2012 and January 2019;

Interrogatory 15(b)–(c) limited to information between July 2012 and January 2019 if criteria described in 15(a) were in effect;

Interrogatory 18(a)–(d);

Interrogatory 19 limited to official capacity meetings while Defendant McCall was Chief which were for the purpose of addressing racial issues within the department and community.

To the extent that Defendant McCall has not already provided a full response, Plaintiffs' Motion to Compel is GRANTED as to Interrogatory No. 10 and its associated Request for Production No. 7.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE