IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRANDON ELLIS, *et al.*,

    Plaintiffs,

v.                                                Civ. No. 17-1011 KWR/GBW

HOBBS POLICE DEPARTMENT, *et al.*,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me pursuant to Defendants' Motion for Sanction of Dismissal Against Plaintiff Brandon Ellis (*doc. 163*) and the Court's Order of Reference Relating to Defendant's Motion for Sanction of Dismissal (*doc. 179*). Having considered the parties' briefing (*docs. 163*, *170*, *175*) and the evidence presented at the January 24, 2020 motion hearing (*doc. 235*),[1] I RECOMMEND that the Court DENY Defendants' motion IN PART.

### I. BACKGROUND

Plaintiffs Brandon Ellis, Jeremy Artis, and Vasshawn Robinson filed suit in this Court on October 5, 2017, alleging claims of discrimination and retaliation in connection

---

[1] At the conclusion of the hearing, Plaintiffs' counsel requested a period of time to review documents which had been subpoenaed from Defendants' expert. The Court permitted Defendants' counsel fourteen days to review those documents for privileged matters and Plaintiffs' counsel an additional ten days to consider whether she wished to submit any of the documents as relevant evidence for this hearing. Those time periods have elapsed, and no party has submitted any such document to the Court as relevant to this motion.

with their employment at the Hobbs Police Department ("HPD"). *Doc. 1*. Defendants filed the instant Motion for Sanction of Dismissal on September 30, 2019, several weeks prior to the termination[2] of a lengthy and contentious discovery phase. *Doc. 163*. They seek dismissal of Plaintiff Brandon Ellis's claims as a sanction for the deletion of data on his personal cell phone, alleging violations of Federal Rule of Civil Procedure 37 and the Court's November 15, 2018 Order to Preserve Digital Evidence (*doc. 92*). Plaintiff Ellis argues that he did not violate either Rule 37 or the Court's order and, in the alternative, that dismissal of his claims would be an inappropriately severe sanction. *See doc. 170*.

The unfortunate history of Mr. Ellis's cell phone is as follows. In or around the first half of 2016, during the final months of his employment with HPD, Mr. Ellis used his iPhone 6 to make a number of audio recordings at his workplace. *See doc. 170-1* at 6:16–8:4; *doc. 170-2* at 75–77. Mr. Ellis testified that he made these recordings in order to defend himself against future internal affairs ("IA") investigations, as he had previously been disciplined for lying during an IA investigation. *See doc. 170-1* at 10:10–13. This statement is corroborated by the affidavit of Joe Wall, a former City of Hobbs police officer, who stated that he advised Mr. Ellis to record "any and all contacts with superiors" regarding the internal affairs investigation against him. *Doc. 170-3* at 2.

---

[2] Following numerous extensions of the deadline, the discovery period in this case finally terminated on October 27, 2019. *See doc. 150*.

The timespan of these audio recordings is not entirely clear. However, Mr. Ellis estimated that the IA investigation began in January or February of 2016, and that he began recording at some time thereafter.[3] Mr. Ellis testified that he made these recordings every time he remembered to do so when entering the police department. *See doc. 163-1* at 75:17–19. At that time, Mr. Ellis worked approximately fourteen days per month in twelve-hour shifts. He testified that he recorded only in the police department, and would stop recording when he exited the building to go out on patrol.

Mr. Ellis was unable to recall, either during his depositions or at the evidentiary hearing, whether he deleted any of the audio recordings after making them. *See doc. 163-1* at 104:20–25 ("If there was no [] issues or problems, I think I might have deleted them at the time . . ."); *doc. 170-1* at 15:4–5 ("I can't say 100 percent sure if I had deleted recordings in the past or not."). However, he testified repeatedly that, if he did delete any of the recordings, he did not listen to them prior to doing so. *See doc 170-1* at 10:7–9. In addition, Mr. Ellis explained during the evidentiary hearing and his deposition that he would only have deleted audio recordings during which he walked into the police department but did not speak with anyone. *See doc. 170-2* at 139:4–16. Deletion would have occurred directly after the recording was made. Mr. Ellis testified positively that

---

[3] Based on their file names, the audio recordings recovered by forensic examination appear to range in date from June to August of 2016. *See doc. 170-5* at 2–3. Several additional recordings appear to have been made in 2017, 2018, and 2019, after Mr. Ellis's employment with HPD was terminated. *See id.*

3

no recordings were deleted after he formed the intention to sue HPD or any of the individual defendants.

Mr. Ellis disclosed at least some of these recordings to an investigator at his attorneys' firm "at the beginning" of their representation. *See doc. 163-1* at 77:16–18; *doc. 170* at 5. However, for reasons that are not entirely clear, it seems Plaintiff's counsel did not actually receive the recordings until much later. Mr. Ellis provided only two of the forty-six recordings in his possession to the investigator because, he testified, those two recordings contained the conversations he remembered having. He testified that he did not listen to any of the other recordings to determine whether they might also be relevant. The recordings were not mentioned in Plaintiff's initial disclosures or in any subsequent supplementation. On May 1, 2018, Defendants sent a discovery request seeking every "audio or video recording . . . which records or memorializes any statement or testimony of any person having knowledge of any fact or issue relating to this lawsuit."[4] *Doc. 163-2* at 4. Mr. Ellis did not identify any of the recordings in response.

In about May of 2018, while this discovery was ongoing, Mr. Ellis gave the iPhone 6 used to make the audio recordings to his daughter. Prior to doing so he transferred his data from the iPhone 6 to his new phone, an iPhone 8. *Doc. 170-1* at 13–

---

[4] Because Defendants' motion for sanctions is not based on Plaintiff's failure to disclose the existence of the recordings during discovery, the undersigned assumes without deciding that the recordings fell within the scope of this discovery request.

4

14. It is unclear whether the iPhone 6 was restored to factory settings during the transfer, or whether Mr. Ellis's data remained. Thomas Harris, Defendants' expert witness, testified that all data would have been permanently erased from the iPhone 6 in the event of a factory reset. However, it was also possible to transfer Mr. Ellis's data to the new iPhone 8 without restoring the iPhone 6 to factory settings. In that case, Mr. Harris testified that all audio recordings made on the iPhone 6, including any deleted ones, would still have been recoverable from the iPhone 6. In contrast, no deleted recordings would have been transferred to the iPhone 8. There is unfortunately no way of determining whether a factory reset was performed on the iPhone 6 in spring of 2018, and, consequently, no way of knowing whether any deleted recordings would have been recoverable from the iPhone 6 at that time. In any event, it was Mr. Ellis's (erroneous) belief at that time that nothing could ever be truly deleted from a cell phone. He also testified that to his knowledge, all information on the iPhone 6, including every single audio recording, was transferred to the iPhone 8. Therefore, he did not believe any data had been lost due to the transfer.

The existence of the recordings finally came to the attention of opposing counsel on November 5, 2018, when Mr. Ellis mentioned in response to one of defense counsel's questions that he knew Sergeant Herrera made a particular statement because Mr. Ellis "recorded him saying that." *Doc. 170-2* at 74:19–24. Plaintiff's counsel indicated that she had been "trying to get" the recording of Sergeant Herrera, but had been unable "to

get it downloaded." *Id*. at 75:8–10. On or before November 14, 2018, Plaintiff's counsel disclosed a total of 46 recordings to Defendants, all of which had been recovered via the online storage service Dropbox. *See doc. 91* at 2.

On November 15, 2018, in response to Defendants' concerns about the preservation of any recordings that might still remain on the iPhone 6, the Court issued a preservation order directing Plaintiff Ellis to: (1) maintain his iCloud account in good standing with sufficient storage; (2) maintain any backup files for iOS devices existing on his home computer; (3) maintain any other cloud storage accounts in good standing; and (4) refrain from deleting, on the iPhone 6, any recording application or file or data associated with such application. *Doc. 92*. On December 26, 2018, the Court filed a Stipulated Order Resolving Cell Phone Production, wherein the parties agreed that Mr. Ellis would provide his iPhone 6 and relevant passwords to Defendants' forensic analyst no later than January 7, 2019.[5] *Doc. 99*.

Mr. Ellis and his wife, Desiree Ellis, were concerned that their daughter—who was then using the iPhone 6—would be left without a cell phone during the forensic examination. Mrs. Ellis testified at the evidentiary hearing and by affidavit that she does not allow her children to go anywhere without cell phones, due to safety concerns. *See doc. 170-4* at 2. Because Mrs. Ellis was eligible to upgrade her phone, they decided to

---

[5] The Stipulated Order actually directed Mr. Ellis to submit his phone by January 7, 2018. However, the parties' intended submission date of January 7, 2019, can be clearly inferred.

purchase her a new phone and transfer their daughter's data to Mrs. Ellis's current phone, an iPhone 7 Plus. On January 5, 2019, Mr. and Mrs. Ellis took the iPhone 6 to a Verizon store, where they informed the Verizon technician about the Court's preservation order. *See id.* at 1–2. The Ellises testified that the technician assured them that their daughter's data could be copied to the iPhone 7 Plus without the permanent loss of any information from the iPhone 6. *Id.* at 2; *doc. 170-1* at 125:2–9. Mr. Ellis explained during his hearing testimony that the intent was to copy their daughter's information to the iPhone 7 Plus without erasing anything from the iPhone 6. Both Mr. and Mrs. Ellis testified that they trusted the Verizon technician's assurances, given their own limited knowledge about cell phones. Neither believed that they were in violation of the Court's order by initiating the transfer of data from the iPhone 6 to the iPhone 7 Plus.

After this transfer was performed, Mr. Ellis sent the iPhone 6 to Defendants' forensic analyst. Mr. Harris received the iPhone 6 on January 9, 2019. *Doc. 163-3*. He found that the phone was in "first time setup" mode, meaning that it had been erased, or "factory reset," before being sent to Ambitions Consulting Group. *Id.* at 1. Mr. Harris was able to determine that this factory reset had occurred on January 5, 2019, at 10:49 AM MST. The forensic analysts did not find a backup of the iPhone 6 in Mr. Ellis's iCloud account. Mr. Harris could not say whether a backup had existed at one time and been erased, or whether the iPhone 6 had never been backed up to iCloud at

7

all. *Id*. Mr. Ellis testified that he did not know why no iCloud backup existed, and that it was possible he had never set up an iCloud account on that phone.

In light of these findings, Defendants deposed Mr. Ellis a second time on March 12, 2019. *See doc. 170-1*. During that deposition, Mr. Ellis agreed to provide his current phone, as well as his wife's and daughter's phones, to Defendants' forensic analyst "if that's what it takes." *Id*. at 40:14–20. Ambitions Consulting Group received Mr. Ellis's iPhone 8 on May 16, 2019, and issued their report on October 14, 2019. *Doc. 170-5* at 1. Mr. Harris examined the phone and found that the app "Voice Recorder Free" was installed on the phone and contained 46 unique audio recordings.[6] There was a single backup of the iPhone 8 to Mr. Ellis's iCloud account, but the backup was inaccessible due to corruption. *Id*. Ambitions Consulting Group also received the phones of Desiree Ellis and her daughter on August 14, 2019. *Doc. 170-5* at 4. Examination revealed no evidence of data belonging to Mr. Ellis. Metadata indicated that the iPhone 7 Plus was reset on January 5, 2019 between 10:00 and 11:00 AM MST, and that an iCloud Restore was performed on both phones during that same interval of time. *Id*.

The Court held an evidentiary hearing on January 24, 2020 and heard the testimony of Mr. Ellis, Desiree Ellis, and forensic expert Thomas Harris. *Doc. 235*. Defendants' motion for sanctions is now before the Court.

---

[6] Although no evidence about the content of the recordings has been presented to the Court, these 46 recordings are presumably the same 46 recordings disclosed to Defendants in November of 2018. *See doc. 91* at 2.

8

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 37 governs sanctions for both the failure to preserve evidence and the violation of a court's discovery order. All parties agree that the rules applicable to Defendants' motion are Rule 37(e) and Rule 37(b).

Rule 37(e), which deals with the failure to preserve electronically stored information, provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>   (A) presume that the lost information was unfavorable to the party;
>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>   (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Rule 37(b), which governs sanctions for failing to comply with a court's discovery order, reads:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

### III. ANALYSIS

Two questions are before the Court. The first is whether Plaintiff violated either his duty to preserve electronically stored information, codified in Rule 37(e), or the Court's November 15, 2018 order to preserve digital evidence. If so, the second question concerns the appropriateness of dismissal and other sanctions to address his violation. Defendants request the dismissal of Plaintiff Ellis's claims as a sanction for his misconduct, in addition to fees and costs associated with their discovery of the audio recordings, their motion for sanctions, and their forensic expert. *See generally doc. 163*.

In resolving these issues, I note that Defendants' motion for sanctions is based specifically on Mr. Ellis's conduct of January 5, 2019. *See doc. 163* at 2 ("This motion seeks dismissal of Plaintiff Brandon Ellis' claims based on his willful destruction of electronically stored information ("ESI") from his iPhone *on January 5, 2019 . . . .*") (emphasis added). Therefore, I will only consider any of his other actions with respect

to the audio recordings as context for his conduct of January 5, 2019, and not consider if those other actions are independently sanctionable.

## A. Rule 37(e)

Turning first to Rule 37(e), the preliminary question is whether any violation occurred.

Two crucial facts remain unknown and presumably unknowable: (1) whether Mr. Ellis ever deleted any of his audio recordings in the first place, and (2) whether the iPhone 6 was restored to factory settings in the spring of 2018, permanently erasing all its data. Defendants' theory is that deleted, but recoverable, recordings may have existed on the iPhone 6 prior to the January 5, 2019 factory reset. If Mr. Ellis never deleted any recordings, then this cannot be true. Likewise, if all evidence of deleted recordings was previously erased in spring of 2018, no relevant data could have been lost on January 5, 2019. Rule 37(e) provides for sanctions only if electronically stored information "that should have been preserved . . . is lost," and then only if the other party is prejudiced by that loss. Fed. R. Civ. P. 37(e)(1). If no information that should have been preserved was lost on January 5, 2019—the date of the action for which Defendants seek sanctions—then Rule 37(e) cannot apply.

In a motion for spoliation sanctions under Rule 37(e), the moving party bears the burden of establishing their opponent's destruction of evidence. *See, e.g., Ryan v. Editions Ltd. West*, 786 F.3d 754, 766 (9th Cir. 2015); *Mafille v. Kaiser-Francis Oil Co.*, 2019

WL 2189515, at *2 (N.D. Okla. May 21, 2019) (unpublished). Courts in this circuit have generally applied a preponderance of the evidence standard in this context. *See United States ex rel. Koch v. Koch Indus.*, 197 F.R.D. 463, 480, 486 (N.D. Okla. 1998); *FTC v. Affiliate Strategies, Inc.*, 2011 WL 2084147, at *3 (D. Kan. May 24, 2011) (unpublished) (citing *United States v. Krause*, 367 B.R. 740, 764 (Bankr. D. Kan. June 4, 2007)). *But see Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498–99 (S.D.N.Y. 2016) (applying "clear and convincing" standard to determine non-moving party's state of mind under Rule 37(e)).

Here, even under the more lenient preponderance standard, Defendants cannot meet their burden. First, based on the evidence before the Court, I conclude that no *non*-deleted recordings were lost during the January 5, 2019 reset. It is of course conceivable that non-deleted recordings existed on the iPhone 6 which were, for some unknown reason, not transferred to the iPhone 8 or Mr. Ellis's Dropbox account. But this does not appear to be Defendants' theory, nor is it supported by the evidence. Rather, Defendants allege that Mr. Ellis intentionally deleted unfavorable recordings and then erased the phone in order to permanently cover his tracks. *See, e.g.*, doc. 175 at 5. Viewing the evidence as a whole, there is no reason to believe that all non-deleted recordings were not transferred from the iPhone 6 to the iPhone 8 in spring of 2018, as well as being saved on Mr. Ellis's Dropbox account. I therefore conclude that this data was not lost and does not fall within the ambit of Rule 37(e).

The potential existence of deleted recordings on the iPhone 6 presents a more challenging question. Given Mr. Ellis's inconsistent recollection regarding whether he deleted any of his recordings, the undersigned will accept that potentially recoverable deleted audio recordings existed on the iPhone 6 prior to January 5, 2019 at 10:49 AM MST. Mr. Harris testified that it was possible to transfer data from the iPhone 6 to another phone (in this case the iPhone 8) without erasing it from the iPhone 6. Therefore, without further information, it is certainly possible that deleted recordings remained on the iPhone 6 after it was given to the Ellises' daughter and until the January 5, 2019 reset. Mr. Harris also testified that, if Mr. Ellis had deleted some individual audio recordings but had not performed a factory reset, those recordings would be recoverable using modern forensic methods.

However, I find credible Mr. Ellis's testimony that, if he did delete any individual audio recordings from his iPhone 6, they would have been recordings on which nobody spoke. Defendants emphasize Mr. Ellis's earlier deposition statement that he "picked the recordings when I had issues" to keep, *doc. 170-2* at 109:19–20, and his affirmation of defense counsel's statement that he "only ke[pt] the recordings that supported the claims [he] brought in this lawsuit and deleted the others," *id*. at 105:7–14. But Mr. Ellis clarified at the evidentiary hearing that what he meant by having "issues" with certain recordings was that, if no one talked to him while at the police department, he had no use for the recording and saw no reason to keep it. Otherwise,

13

he kept the recording and it was among the forty-six already disclosed to Defendants. Any such deleted recordings would not have aided Defendants in their opposition,[7] nor is there any reason that they "should have been preserved" pursuant to Rule 37(e). I therefore recommend finding that Mr. Ellis did not violate Rule 37(e).

The undersigned further notes that sanctions under Rule 37(e) would be impermissible[8] in any case. Rule 37(e) permits the Court to employ dismissal as a sanction "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2)(C). Having heard Mr. Ellis's testimony at the evidentiary hearing, the undersigned finds him credible. Mr. Ellis's intention on January 5, 2019, was to ensure that his daughter had a working cell phone with all of her data intact. Nothing suggests that Mr. Ellis acted with the intent to deprive Defendants of the use of audio recordings, deleted or otherwise, in the litigation. Rule 37(e) also permits the Court to impose other sanctions "no greater than necessary to cure the prejudice" if the other party has been prejudiced

---

[7] Indeed, even if Mr. Ellis had deleted audio recordings containing speech, it is difficult to imagine what an HPD employee could have said to significantly discredit his case or assist Defendants'. Evidence of a single non-discriminatory action, for instance, would not prove that other actions were non-discriminatory. In any event, there is no need to delve further into this question because the undersigned finds Mr. Ellis's testimony credible.

[8] The undersigned agrees with Defendants' conclusion that Rule 37(e) "forecloses reliance on inherent authority or state law" to determine the appropriate sanction for spoliation. Fed. R. Civ. P. 37, Advisory Committee Notes on the 2015 Amendment. This Court can therefore impose sanctions pursuant to Rule 37(e) only if the express conditions of the rule are met. *See also Newberry v. Cty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (unpublished) ("The detailed language of Rule 37(e)…foreclosed reliance on inherent authority to determine whether terminating sanctions were appropriate.") (internal quotation omitted). Even if the Court retained its inherent authority to impose sanctions, I do not find that dismissal would be an appropriate sanction under the circumstances.

by the loss of the information. Fed. R. Civ. P. 37(e)(1). Because no discernible prejudice resulted to Defendants from the loss of any deleted recordings on the iPhone 6, no sanctions would be appropriate under Rule 37(e)(1) even if a violation had occurred.

## B. The Court's Preservation Order

Many of the same questions arise with respect to whether Mr. Ellis violated the Court's November 15, 2018 preservation order. The Court's preservation order directed Mr. Ellis not to delete from the iPhone 6 "any recording app, or file/data associated with such an app." *Doc. 92* at 2. If no recording app or associated files remained on the iPhone 6 prior to the January 5, 2019 reset—a question that cannot be definitively resolved—then Mr. Ellis cannot *de facto* have violated the order.

As explained above, the undersigned accepts for purposes of this motion that some data associated with the recording app existed on the iPhone 6 prior to January 5, 2019, and was destroyed by the factory reset. Particularly in light of the Court's standing preservation order, Mr. Ellis's treatment of the iPhone 6 was reckless. The Court's order directed Mr. Ellis to "preserve the status quo" with respect to the iPhone 6. *Doc. 92* at 1. He therefore knew that the electronically stored information on the phone should not have been altered in any way. Nonetheless, mere days before the iPhone 6 was to undergo forensic analysis, Mr. Ellis and his wife went to a Verizon store with the intention of having a Verizon employee manipulate data stored on the iPhone 6. Both Mr. and Mrs. Ellis testified that they did not understand the nuances of

15

data transfer, and the undersigned finds their testimony credible. However, this ignorance was all the more reason to exercise extreme caution in doing anything that might alter the information stored on the phone. Mr. Ellis himself did not know whether the data that Defendants sought existed on the iPhone 6, and he was bound to act accordingly by preserving whatever data remained. He did not take reasonable steps to do so. The fact that any deleted audio recordings would not have been helpful or relevant to the case is immaterial under the language of the Court's preservation order, which directed Mr. Ellis to preserve "*any* . . . file/data associated with [any recording] app." *Doc. 92* at 2. I therefore recommend finding that Mr. Ellis violated the Court's order to preserve digital evidence.

The remaining issue before the Court is the imposition of an appropriate sanction for this violation. Rule 37(b) permits more flexibility than Rule 37(e) in the assessment of sanctions. *See, e.g.*, *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) ("Determination of the correct sanction for a discovery violation is a fact specific inquiry that the district court is best qualified to make."). To redress the violation of a discovery order, the Court may impose any of the sanctions listed in Rule 37(b), as well as any "further just orders." Fed. R. Civ. P. 37(b).

In determining whether to impose a sanction of dismissal, courts in this circuit apply the five-part test set out in *Ehrenhaus*. The factors here to be considered are: (1) the degree of actual prejudice to Defendants, (2) the amount of interference with the

judicial process, (3) Mr. Ellis's culpability, (4) whether the Court warned Mr. Ellis in advance that dismissal of his claims would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions. *Ehrenhaus*, 965 F.2d at 921.

All five factors weigh against the dismissal of Mr. Ellis's claims. For the reasons explained above, the undersigned finds no actual prejudice to Defendants from the factory reset performed on January 5, 2019. Mr. Ellis's credible testimony established that any lost digital evidence likely consisted only of silent audio recordings. For substantially the same reasons, interference with the judicial process was minimal. As to the third factor, although Mr. Ellis may have acted recklessly with respect to the Court's preservation order, I do not find that he acted with any culpable intention to violate the Court's order or deprive Defendants of evidence. Fourth, Mr. Ellis was not warned that failure to comply precisely with the Court's order might result in the dismissal of his claims. Unlike the parties in many of Defendants' cited cases, Mr. Ellis was neither a repeat offender nor baldly defiant of the Court's order. *See*, *e.g.*, *id.* at 918 (plaintiff was warned that his case would be dismissed if he did not appear for a scheduled deposition); *Freddie v. Marten Transport, Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011) (plaintiff made numerous inconsistent statements in discovery and at hearings); *Coyne v. Los Alamos Nat'l Security, LLC*, 2017 WL 3225466, at *2–4 (D.N.M. May 1, 2017) (unpublished) (plaintiff had a history of numerous discovery violations and prior sanctions). Finally, given the absence of prejudice to Defendants and the credible

evidence of Mr. Ellis's desire to comply with this Court's instructions, I find that lesser sanctions are effective both to address this violation and to deter any future misconduct.

During the hearing held on January 24, 2020, Defendants requested an alternative sanction of prohibiting Mr. Ellis from using any of the audio recordings as evidence. Prohibiting the disobedient party from introducing certain kinds of evidence is a sanction specifically contemplated by the Federal Rules. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii). Considering Mr. Ellis's violation, his level of culpability, and the minimal extent of the actual prejudice to Defendants, I find this sanction to be just and proportional. I therefore recommend an order prohibiting the use by Mr. Ellis of any audio recordings made on his iPhone 6 during the relevant time period, except for the purpose of impeachment.[9]

Finally, Defendants have requested their attorney's fees and other costs in litigating this motion and pursuing discovery of the audio recordings. *See doc. 163* at 16–17. Rule 37(b) provides that the court must order the disobedient party to pay the reasonable expenses caused by his failure, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The district court enjoys "very broad discretion" in fashioning sanctions, *Lee v. Max*

---

[9] At the hearing, Defendants argued that the only exception should be if they "opened the door" by referring to the recordings. I have considered that narrower exception but reject it. Given the limited culpability and prejudice described herein, Plaintiffs should be able to use a recording if its content materially impeaches a witness called by or affiliated with Defendants.

*Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011), and correspondingly broad discretion in determining when they ought not to be employed. In this instance, I find that the sanction recommended above is adequate to address Mr. Ellis's misconduct, and that a further monetary sanction would be unjust. Accordingly, I recommend that the Court deny Defendants' request for attorney's fees and costs.

## IV. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY IN PART Defendants' Motion for Sanction of Dismissal Against Plaintiff Brandon Ellis (*doc. 163*) and decline to dismiss his claims. As an alternative sanction for his violation of the Court's preservation order, I RECOMMEND that Plaintiff Brandon Ellis be prohibited from introducing any evidence of audio recordings taken on his iPhone 6 at HPD, except for the purpose of impeachment. Lastly, I RECOMMEND that Defendants' request for attorney's fees and costs be DENIED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**