IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRANDON ELLIS,
JEREMY ARTIS,
VASSHAWN ROBINSON,

      Plaintiffs,

vs.                                                                              Case No. 2:17-cv-01011 KWR/GBW

HOBBS POLICE DEPARTMENT,
JASON HERRERA, CHAD WRIGHT,
SHANE BLEVINS, JEREMY KIRK,
MATTHEW BURLESON, JIMMY GRIMES,
CHRISTOPHER MCCALL, J.J. MURPHY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment on Plaintiff Robinson's Claims, filed on November 21, 2019 (**Doc. 187**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART.**

### BACKGROUND

This case arises out of alleged racial discrimination in the Hobbs Police Department and retaliation for Plaintiffs' opposition to racial discrimination within the Hobbs Police Department. Plaintiff Robinson alleges he was retaliated against for (1) opposing HPD's racial discrimination and (2) opposing alleged discriminatory police practices against African Americans. Defendants include Hobbs Police Department, Chief McCall, and several supervisors and officers.

Plaintiff filed this case under 42 U.S.C. § 1981 and 1983, and the New Mexico Whistleblower Protection Act. Plaintiff's complaint asserts the following claims:

Count I: New Mexico Whistleblower Protection Act

Count II: First Amendment Retaliation under § 1983; and

Count III: Racial Discrimination pursuant to § 1981.

Defendants moved for summary judgment on all claims asserted by Plaintiff Robinson. **Doc. 187.**

## LEGAL STANDARD

Defendants did not raise qualified immunity. Therefore, the Court will analyze the motion under normal summary judgment principles. A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the

nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

## UNDISPUTED FACTS[1]

The Court takes the facts in the light most favorable to Plaintiff. The Court finds Plaintiff's Additional Material Facts F-CC generally well-supported in the record[2], and Defendants have not shown that the "materials cited [by Plaintiff] do not establish the [] presence of a genuine dispute, or that [Plaintiff] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Factual assertions not specifically controverted or disputed are deemed admitted. To the extent a party does not cite to the record to support a fact or dispute a fact, the Court disregards that factual assertion or dispute. Fed. R. Civ. P. 56(c)(1)(A); D.N.M.LR-Civ. 56-1(b) ("All material facts set forth…will be deemed undisputed unless specifically controverted."); Fed. R. Civ. P. 56(e)(2). A party waives any objection that factual assertions rely on inadmissible evidence if they do not specifically assert an objection and explain which portion of the record is inadmissible and why. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2722, at 384–85 (3d ed. 1998) ("[U]ncertified or otherwise inadmissible documents may be considered by the court if not

---

[1] Plaintiff has referred to one of Defendants' expert reports by William D. Foote. Defendants have not challenged with specificity the use of that report in this summary judgment motion, therefore the Court concludes any objection is waived.
  Defendants object that some statements are hearsay. However, the Court concludes that statements by officers or supervisors of the Hobbs Police Department are party-opponent statements. FRE 801(d)(2). The officers, even if not defendants, are agents of Defendant HPD or the City of Hobbs. However, statements by Sandoval County officers are hearsay, as are statements by HPD officers relayed to Plaintiff Robinson through a non-party or non-HPD agent.

[2] Plaintiff's assertion in AMF AA that Chief McCall informed Deputy Chief Dunlap that Plaintiff Robinson was the source of the report to Mr. Cotton is not supported in the record. *See* **Doc. 242-1, Ex. A, at 32-34.**

challenged. The objection must be timely or it will be deemed to have been waived."), *quoted in Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 1000 (10th Cir. 2019).

Plaintiff asserts a number of incidents of harassment and discriminatory discipline. Plaintiff objected to a quota system, in which he was forced to conduct a certain number of stops to move on to the next officer in training phase. **AMF J.** Officer Kirk, his field training officer, created a quota Plaintiff was required to meet to pass phase I of field training. Plaintiff objected to this requirement and Officer Kirk failed Plaintiff multiple times.

On his first day of training, Officer Kirk told Plaintiff he could not sit down at the table in the briefing room. However, white trainees were allowed to sit at the table during briefing. **AMF N.** Officer Kirk also said that "no one gives a F***" about Plaintiff's military service." Plaintiff was repeatedly called out for not having his boots polished. Plaintiff was reprimanded even when he had another officer polish them for him. **AMF O.** Other officers called him fat and lazy. Plaintiff Artis observed that Plaintiff Robinson was disciplined more harshly than other officers and spoken to in an abusive manner. Officer Ast yelled at Plaintiff over the radio "why aren't you answering your fucking radio" while Plaintiff was trying to tell his FTO his radio was on. Plaintiff was written up for not having his equipment turned on. **AMF P**.

While deployed, Plaintiff had experience driving the MPAP, an armored mine-resistant vehicle. HPD also had one of those vehicles. Plaintiff was one of the only officers at HPD who knew how to drive an MPAP. **AMF J.** Plaintiff was disciplined for telling other officers that they had failed to shut it down correctly.

Plaintiff Artis also observed that other new officers who were not African American were not treated by their FTOS in the same manner. Defendant Kirk belittled Plaintiff based on how he looked, his military experience, and how he appeared while on duty. Defendant Kirk threatened

4

Plaintiff with discipline if he did not make it to Albuquerque during a snowstorm, while other white officers were not disciplined.  **AMF S.**  Plaintiff was told he was not shaving properly, but it was difficult for him to shave closely as an African American.  **AMF T.**

Cpt. Cunningham was involved in the recruitment of Plaintiffs Robinson and Artis from the military.  Cunningham asked a previous military recruit, Officer Mills, about his thoughts on Plaintiff Robinson.  Officer Mills expressed concerns about Plaintiff without stating any details.  Officer Mills later harassed Plaintiff by mocking his sick dog and asking whether Plaintiff's dog had contracted syphilis by licking Plaintiff's genitals.  Plaintiff Robinson understood this to have racial overtones.  **AMF G.**

Defendants Wright and Herrera, both supervisors, witnessed the manner in which Plaintiff was treated and saw that the Field Training Officers allowed it to happen.  Defendant Wright treated Plaintiff more harshly than white recruits and refused to listen to Plaintiff's complaints about how Defendant Kirk and others treated him.  **AMF R.**

Plaintiff observed policing practices he considered to be abuse of power.  He observed officers abuse consensual encounters so they could increase arrests by finding active warrants.  He also observed officer use the pedestrians in roadway statute to stop people to run warrants and get arrests.  **Doc. 207 AMF U.**

In December 2015 or January 2016, Plaintiff reported to Joseph Cotton, local chapter president of the NAACP, about the problem he had with HPD's selective law enforcement against minorities.  He also reported how he was being treated as an officer in training.  **Doc. 207 AMF V.**  Mr. Cotton spoke to Defendants McCall and Murphy about Plaintiff's complaints of discriminatory policing. He also told them that Plaintiffs made the complaint.  **AMF W.**

In January 2016, Deputy Chief Dunlap drafted and placed Plaintiff on a last chance contract. This contract was not based on any HPD disciplinary policy but was something he came up with because Defendant McCall said there was not enough to terminate Plaintiff. Plaintiff was the only officer Dunlap ever placed on a last chance contract. Prior to placing Plaintiff on this last chance contract, Deputy Chief Dunlap learned about Mr. Cotton's call.

This last chance contract was based on Defendant Wright's memo recommending that Plaintiff be terminated. Defendant Wright's memo recounted conflicts with other officers, including incidents in which Plaintiff alleges he was harassed. Defendant Wright concluded that Plaintiff was telling half-truths. Plaintiff was not given a chance to tell his side of the story to Deputy Chief Dunlap.

Defendant Wright has a history of making racist comments. **Doc. 205-4, Ex. 5; Doc. 205 AMF F.** He was also terminated from HPD for his traffic stops against African Americans. **Doc. 205 AMF E; Doc. 207 AMF V.** Defendant Wright was rehired years later but was directed to stay away from the southeast portion of Hobbs due to the perception that he was targeting minorities. **Doc. 205.**

Plaintiff was hired away from HPD by Lea County Sherriff's Office. Subsequently, Plaintiff applied to Sandoval County, but he never heard back.

## DISCUSSION

**I.**     **Genuine Dispute of Material Fact Exists as to Plaintiff's New Mexico Whistleblower Protection Act Claim (Count I) against Defendant HPD and Chief McCall.[3]**

---

[3] Defendant HPD asserts, for the first time in a footnote in a reply brief (**Doc. 219**) that it is not an appropriate entity. Because Plaintiff did not have the opportunity to respond or propose an appropriate remedy, the Court will not address that argument in this opinion. Moreover, Plaintiff appears to have named Chief McCall in his official capacity and Defendant Murphy, which is a suit against the City of Hobbs.

Plaintiff asserts a New Mexico Whistleblower Protection claim solely against Defendant HPD or Chief McCall in his official capacity. Defendants argue that Plaintiff's WPA claim fails because he cannot make out a *prima facie* case of WPA retaliation. Defendant specifically argues that Plaintiff cannot show (1) an adverse employment action or (2) a causal relationship between his protected reporting and any adverse employment action.

The New Mexico Whistleblower Protection Act protects public employees who engage in certain protected activity. N.M. Stat. Ann. § 10-16C-1 *et al.* As relevant here, the WPA protects an employee who (1) communicates to the public employer or *third party* about an action that the public employee believes in good faith constitutes an unlawful or improper act; and (2) objects to or refuses to participate in an activity, policy, or practice e that constitutes an unlawful or improper act. N.M. Stat. Ann. § 10-16C-3(A) and (C).

To state a *prima facie* case under the NMWPA, a plaintiff must establish "three elements: (i) the employee engaged in a protected disclosure; (ii) the employer took an adverse employment action against the employee; and (iii) a causal connection exists between the protected disclosure and the adverse action." *Walton v. N.M. State Land Office*, 113 F. Supp. 3d 1178, 1199 (D.N.M. 2015) (citing N.M. Stat. Ann. § 10-16C-3) (subsequent citation omitted), *quoted in Hartigan v. Cty. of Guadalupe*, No. CV 17-0537 RB/GJF, 2017 WL 4773268, at *4 (D.N.M. Oct. 20, 2017).

The statute defines a retaliatory action as "any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment." NMSA § 10-16C-2(D). This language does not require Plaintiff to show a constructive discharge.

The New Mexico Legislature enacted the WPA "to encourage employees to report illegal practices without fear of reprisal by their employers." *Janet v. Marshall,* 2013-NMCA-037, ¶ 21, 296 P.3d 1253 (internal quotation marks and citation omitted). "The WPA was modeled after its

7

federal counterpart." *Wills v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-105, ¶ 19, 357 P.3d 453 (citing 5 U.S.C. § 2302(b)(8) (2013)), *quoted in Kakuska v. Roswell Indep. Sch. Dist.*, 2019 WL 2103358, at *2 (N.M. Ct. App. Apr. 16, 2019).

The New Mexico WPA was enacted in 2010 and no New Mexico Supreme Court case answers the questions presented. "When New Mexico cases do not directly answer the question presented, we look for guidance in analogous law in other states or the federal system." *Wills v. Bd. of Regents of Univ. of New Mexico*, 2015-NMCA-105, ¶ 19, 357 P.3d 453, 457, *CIT Grp./Equip. Fin., Inc. v. Horizon Potash Corp.,* 1994–NMCA–116, ¶ 6, 118 N.M. 665, 884 P.2d 821. "Accordingly, cases interpreting the federal whistleblower law have persuasive value in considering the legislative intent behind the WPA." *Id., citing Trujillo v. N. Rio Arriba Elec. Coop., Inc.,* 2002–NMSC–004, ¶ 8, 131 N.M. 607, 41 P.3d 333 (recognizing that, when New Mexico statutes are similar to their federal counterparts, appellate courts may rely on federal jurisprudence in construing legislative intent). Therefore, the Court looks to federal retaliation cases interpreting the phrase "adverse employment action."

### A. Protected Activity.

Defendant HPD does not dispute, as to this motion only, that Plaintiff engaged in a protected activity. **Doc. 187 at 6.** However, the parties appear to dispute which protected activity occurred.

Plaintiff Robinson reported alleged discrimination and discriminatory policing to a third party, Joe Cotton of the NAACP. **Doc. 207, AMF V, W.** This is a protected activity under NMSA § 10-16C-3(A). Moreover, the record reflected that he objected to participating in a quota system. Refusal to participate in unlawful or improper acts constitutes protected conduct. NMSA § 10-

16C-3(C).  Because of the posture of the parties, the Court will not analyze whether the stops were in fact unlawful or improper.

### B.      Adverse Employment Action and Causality.

Defendant HPD argues that Plaintiff failed to show an adverse employment action or a causal connection with Plaintiff's protected conduct.

Under the WPA retaliatory action includes "taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment." NMSA § 10-16C-2(D).  The courts "liberally define[ ] the phrase adverse employment action" and do not limit such actions to "monetary losses in the form of wages or benefits." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (citation and quotation marks omitted).  The Court may consider acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996) (holding that the filing of false criminal charges against former employee constituted an adverse employment action because of its potential to harm future employment prospects); *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004).  A strong indicator that a challenged employment action is adverse "is that the action causes harm to future employment prospects." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004), *quoted in Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 605 (10th Cir. 2019).  "Coworker hostility or retaliatory harassment constitutes an adverse employment action only if it is sufficiently severe." *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1136–37 (10th Cir. 2005).

Plaintiff has presented evidence that he objected to the quota system and was subsequently disciplined by failing, multiple times, different phases of his officer in training program**.  Doc. 207**, **AMF K, L, M.**  This, along with humiliating comments, sufficiently affected his employment

9

prospects as to be an adverse employment action**.  Doc. 207, AMF K-T.**  There is a genuine dispute of material fact as to causation, because Plaintiff objected to the quota system and subsequently faced adverse employment actions.

Moreover, after he reported to Joseph Cotton, Mr. Cotton spoke to and notified Chief McCall of the reports.  **AMF V-W**.  Thereafter, Officer Mills told Plaintiff to "stop putting peanut butter on your dick and giving your dog syphilis."  **Doc. 187, UMF 5.**  Plaintiff presented evidence that this has racial overtones.  **Doc. 207, AMF G.**  Officer Mills called Plaintiff a "shitty soldier" and said he would not make it in HPD.  Subsequently, Defendant Dunlap drafted and placed Plaintiff on a last chance because Defendant McCall said there was not enough to terminate Plaintiff.  The document threatened Plaintiff with dismissal.  **Doc. 187, UMF 7, Doc. 207, AMF Y.**

The last chance contract was based on a memo written by Defendant Wright.  **Doc. 207, AMF Z.**  This memo described several instances of conflict with other officers, some of which described discipline against Plaintiff Robinson for how he responded to discriminatory harassment by other officers.  Notably, Defendant Wright has a history of racist comments and discriminatory policing.  He was terminated from HPD for racially discriminatory policing, but later rehired.  **Doc. 205, AMF E-G.**

The Court finds that there is a genuine dispute of material fact whether the last chance contract and memo were adverse employment actions.  *See Tapia v. City of Albuquerque*, 170 F. App'x 529, 534 (10th Cir. 2006) ("It is true that warning letters and reprimands can be adverse employment actions. A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment—for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current

position, or affects the plaintiff's future employment opportunities.") (internal citations and quotation marks omitted), *citing Medina v. Income Support Div.,* 413 F.3d 1131, 1137 (10th Cir.2005). The timing of the above adverse employment actions also creates a genuine dispute of material fact as to causation. *Annett v. Univ. of Kansas,* 371 F.3d 1233, 1237–38 (10th Cir.2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was close enough to establish a *prima facie* case of causation); *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (assuming that temporal proximity of two months and one week is sufficient to support a *prima facie* case of retaliation); *Ramirez v. Oklahoma Dep't of Mental Health,* 41 F.3d 584, 596 (10th Cir.1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation)).

Given that Plaintiff had objected to the quota system to his supervisors, and Joe Cotton disclosed Plaintiff's protected disclosure to Chief McCall, the Court concludes there is a genuine dispute of material fact whether Defendants knew about these protected activities. Chief McCall also spoke to Defendant Dunlap about the disclosure to Mr. Cotton**. Doc. 207, AMF Y, AA.** Chief McCall authorized the last chance contract, while other Defendants were aware of Plaintiff's protected opposition to the quota system. It is unclear whether Chief McCall expressly told Deputy Chief Dunlap that Plaintiff made the disclosure to Mr. Cotton. However, since Plaintiff had objected to the quota system and failed several officer in training phases for failing to meet quotas, it is a reasonable inference that Dunlap knew Plaintiff was the one who talked to Joseph Cotton.

**C.     Harassment or hostile work environment also constituted adverse employment action.**

A hostile work environment may also constitute an adverse employment action. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222–23 (10th Cir. 2015). As explained below, the Court concludes

there is a genuine dispute of material fact whether Plaintiff suffered harassment or a hostile work environment.

The harassment must be sufficiently "pervasive or severe to alter the terms, conditions, or privileges of [his] employment." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015). This analysis is generally fact-bound and unsuitable for summary judgment. The Court considers the totality of the circumstances. *Id.* "Courts consider a variety of factors in this holistic analysis, including[ ] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal citations and quotation marks omitted). An employer may be held liable for co-workers' retaliatory harassment where its supervisory or management personnel "either (1) orchestrate the harassment or (2) know about the harassment and acquiesce in it in such a manner as to condone and encourage the co-workers' actions." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1265 (10th Cir. 1998).

Pervasiveness and severity is informed by the environment of the department, which Plaintiff has asserted was racially discriminatory. There must be "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); Moreover, the Supreme Court has admonished that "[w]orkplace conduct is not [to be] measured in isolation" for the purpose of resolving hostile work environment claims. *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), *quoted in Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015).

Here, there is a genuine dispute of material fact whether the harassment was (1) sufficiently severe and (2) whether supervisors or management participated in or acquiesced to the harassment.

*See* **Doc. 207, AMF G-T.** These factual assertions (**AMF G-T**) show that Plaintiff was singled out for harassment and discipline. For example, Plaintiff asserts that Officer Kirk told him that "no one gives an F" about his military service. Officer Kirk told him he could not sit down at the table and told him to stand in the corner. However, white trainees were allowed to sit at the table during briefing. **AMF N**. Plaintiff was also called out for not having his boots polished. This occurred even when Plaintiff Artis, who had not received complaints about his boots, shined Plaintiff Robinson's boots for him. **AMF O**. Plaintiff Artis observed that Plaintiff Robinson was disciplined more harshly than other officers and spoken to over the radio in an abusive manner. Officer Ast yelled at Plaintiff "why aren't you answering your fucking radio" and wrote Plaintiff up for not turning on his equipment Plaintiff was belittled for his appearance and called fat and lazy. His superiors insisted he shave, ignoring that this was more difficult for him. Plaintiff was threatened with discipline when he couldn't make it to work from Albuquerque during a snowstorm, while other officers were not. Plaintiff was disciplined more harshly than other officers. **AMF P.**

Plaintiff asserts he was the only person in the department who had experience operating an MPAP, an armored mine-resistant vehicle, which he operated during deployment. Plaintiff Robinson was disciplined for telling other officers how to shut down the MPAP correctly. Officer Mills told Robinson to take his dog to his vet and to "stop putting peanut butter on your dick and giving your dog syphilis." **Doc. 187, UMF 5; AMF G.** Defendant Kirk belittled Plaintiff based on how he looked and his military experience but did not belittle other white trainees. **Doc. 207 AMF Q.** Defendant Wright observed how Plaintiff was treated and refused to listen to Plaintiff's complaints about how Defendant Kirk treated him. **Doc. 207, AMF R.**

13

The Court judges the severity of this harassment in the environment in which it occurred. *Lounds*, 812 F.3d at 1222-23. One officer bragged to his shift that he "had jailed a lot of niggas today." **Doc. 205 AMF R.** The officer's supervisor, Defendant Herrera, was present but failed to discipline. This language was used in the presence of Plaintiff Ellis. The officers did not think it was a big deal to use these words in front of others in the shift. **Doc. 205, AMF S, T.** Moreover, Plaintiff has created a genuine dispute of material fact that Defendant Wright made racist comments and practiced discriminatory policing. **Doc. 205-4, Ex. 5; Doc. 205 AMF F; Doc. 205 AMF E; Doc. 205 AMF X.** This makes it more likely for a jury to find that the above harassment endured by Plaintiff Robinson was in fact racially based.

Defendants assert they had a legitimate reason to discipline Plaintiff and retaliatory action was not a motivating factor. This is an affirmative defense under NMSA § 10-16C-4. The Court finds this in genuine dispute. Defendant Wright wrote a memo to Captain Walker recommending HPD terminate Plaintiff Robinson. Defendant Wright was previously terminated from HPD for discriminatory policing. Many of the incidents cited in the memo stem from conflict resulting from harassment, and Plaintiff was alleged to have been telling half-truths about the incidents. A reasonable jury could conclude that retaliatory action was a motivating factor in the discipline.

Therefore, Plaintiff's WPA claims survive against HPD or Chief McCall in his official capacity. *Flores v. Herrera,* 384 P.3d 1070 (N.M. 2016) (NMWPA claim may only be asserted against entity or individual in official capacity).

## II.     Count II: First Amendment Retaliation Claim.

Plaintiff also asserts a First Amendment Retaliation claim under § 1983 against Defendants HPD, Chief McCall, Kirk and Wright. **Doc. 207 at 16**. Defendants did not assert qualified immunity, and the Court will not *sua sponte* address it.

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). However, a public employer has a legitimate interest "in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering v. Board of Ed. of Twhp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). To evaluate whether the public employee's constitutionally protected interest in free speech was violated, courts use a five-step test, commonly known as the *Garcetti/Pickering* test, which considers:

> (1) whether the speech was made pursuant to an employee's official duties;
> (2) whether the speech was on a matter of public concern;
> (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
> (4) whether the protected speech was a motivating factor in the adverse employment action; and
> (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017) (internal quotation marks omitted). "The first three steps of the *Garcetti*/*Pickering* test, which determine whether the speech was constitutionally protected, are ordinarily matters of law for a court to decide, and the final two steps are ordinarily questions of fact." *Singh v. Cordle*, 936 F.3d 1022, 1034 (10th Cir. 2019).

Defendants assume for this motion only that Plaintiff can meet the first three prongs of the test. However, Defendants argue that this claim fails on the last two prongs "for the same reasons that his NMWPA claim fails." **Doc. 187 at 15.** Defendants largely reiterate their arguments against the NMWPA claim. *See* **Doc. 187 at 14-16.**

### A. Fourth Prong

"Under the fourth prong of *Garcetti*, plaintiffs bear the burden of establishing both a detrimental employment decision and 'causation – that is, that the constitutionally protected speech was a substantial motivating factor in the employer's decision to adversely alter the employee's

15

conditions of employment." *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cty.*, 587 F.3d 1223, 1236 (10th Cir. 2009). Defendants assert that they did not take any adverse against Plaintiff Robinson, and Defendants' actions were not motivated by his protected activity.

In the First Amendment context, an adverse employment action may include substantial harassment or abuse, removing job duties, giving an employee a written reprimand, or a poor performance rating. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1207–08 (10th Cir. 2007). For the reasons stated above, the Court concludes there is a genuine dispute of material fact whether Plaintiff suffered an adverse employment action and whether the protected speech was a motivating factor in the adverse employment action. *See* Section I(B), (C), *supra*.

### B. Fifth Prong.

Defendants argue that they have "demonstrated that [they] would have taken the same action against the employee even in the absence of the protected speech." *Brammer-Hoelter*, 492 F.3d at 1203. The Court finds there is a genuine dispute of material fact whether Plaintiff would have been reprimanded or harassed had not objected to racial discrimination or quota systems, and whether he would have received a "last chance" contract by Chief McCall if he had not reported to Joseph Cotton.

### C. Individual Defendants.

Defendants also assert that Plaintiff cannot show that the individual defendants are liable under § 1983. The Court concludes that there is sufficient evidence that a reasonable jury could conclude that Defendants McCall, Kirk and Wright each retaliated against Plaintiff for his speech, for the reasons stated in Section I(B), (C). Count II is dismissed as to the remaining individual Defendants.

### III. Count III: Section 1981 racial discrimination.

Defendants sought summary judgment as to procedural due process and equal protection claims under § 1983.  Plaintiff Robinson did not respond to those arguments, therefore the Court assumes that he does not assert § 1983 equal protection or due process claims.

Defendants also sought summary judgment as to Plaintiff's § 1981 racial discrimination claim.  Section 1981 provides that all persons "shall the have same right… to make and enforce contracts… as is enjoyed by white citizens." § 1981.  It authorizes "a plaintiff to bring a claim for hostile work environment based on unlawful race discrimination." *Lounds v. Lincare, Inc.,* 812 F.3d 1208, 1221 (10th Cir. 2015).  Plaintiff appears to assert a (1) hostile environment claim and (2) disparate treatment claims against Defendants McCall, Wright, and Kirk.

    **A.**    **Hostile Work Environment.**

Under § 1981, to assert a prima facie case of racial harassment/hostile work environment, Plaintiff must show that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Bolden v. PRC Inc.,* 43 F.3d 545, 551 (10th Cir.1994) (internal citations omitted).  He must demonstrate "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *McCowan v. All Star Maint., Inc.,* 273 F.3d 917, 923 (10th Cir. 2001) (internal quotations and citations omitted).

Generally, "[t]he same substantive standards apply to a hostile work environment claim regardless of whether the plaintiff has brought it under § 1981 or Title VII." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015), *citing Aramburu v. Boeing Co.,* 112 F.3d 1398, 1410 (10th Cir. 1997).  Accordingly, the Court may look to case law interpreting Title VII claims. *Id.*

17

This standard is more difficult to overcome than under the First Amendment. *Couch*, 587 F.3d at 1237. Unlike Title VII, under §1981 Plaintiff must show direct personal involvement by each individual defendant or custom. To carry his burden Plaintiff must establish the following elements:

> "(1) [he] is a member of a protected group; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [race]; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.

*Lounds v. Lincare, Inc.,* 812 F.3d 1208, 1222 (10th Cir. 2015).

As noted above, Plaintiff must show that the "harassment was racial or stemmed from racial animus." *Bolden v. PRC Inc.,* 43 F.3d 545, 551 (10th Cir.1994), *quoted in Mitchell v. City & Cty. of Denver*, 112 F. App'x 662, 671 (10th Cir. 2004). "[T]he existence of [racial] harassment must be determined in light of the record as a whole, and the trier of fact must examine the totality of the circumstances, including 'the context in which the alleged incidents occurred." *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 925 (10th Cir. 2001) (internal citations and quotation marks omitted). The court considers "a variety of factors" in this holistic analysis, "including[ ] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015).

For the reasons stated above (Section I (B), (C)), Plaintiff has created a genuine dispute of material fact whether (1) the harassment was pervasive or severe enough to alter the terms, conditions or privileges of employment and (2) the harassment was racial or stemmed from racial animus. *See also* **Doc. 207, AMF G-T**.

Moreover, theses specific instances of harassment cannot be viewed in a vacuum. Rather, they occurred in an environment of racial animus and harassment. *See* **Doc. 205, AMF D-N, T,**

**U, V, W, X, Z**. One officer bragged to his shift that he "had jailed a lot of niggas today." **Doc. 205 AMF R.** A supervisor, Defendant Herrera, was present but failed to discipline. The officers did not think it was a big deal to use these words in front of others in the shift. **Doc. 205, AMF S.** Officers were not disciplined. *Id.* **AMF S, T.**

As explained above, Section I(B), (C), there is a genuine dispute whether supervisors such as Defendants Kirk, Wright, and McCall were personally involved in the harassment or knew about the harassment and acquiesced.

      **B.**      **Disparate Treatment.**

A claim of disparate treatment encompasses "a situation where the employer simply treats some people less favorably than others because of their race, color, religion or national origin." *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991), *quoted in Mitchell v. City & Cty. of Denver*, 112 F. App'x 662, 670 (10th Cir. 2004). The elements of a prima facie case are the same whether the claim is brought under Title VII, § 1981 or § 1983. *Id.* at 1162. To establish a prima facie case of racial discrimination under § 1981 Mitchell must demonstrate (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) similarly situated employees were treated differently. *Trujillo v. Univ. of Colo. Health Sci. Ctr.,* 157 F.3d 1211, 1215 (10th Cir.1998).

Here, Plaintiff has not shown that each individual Defendant treated differently other similarly situated individuals. Plaintiff has not pointed to who was similarly situated to him, and how each Defendant treated that person. A supervisor may not be held vicariously liable. *Mitchell v. City & Cty. of Denver*, 112 F. App'x 662, 671 (10th Cir. 2004), *citing* 69 F.3d 441, 446 n. 6 (10th Cir.1995) (all references to § 1983 liability with regard to the issues of custom and policy

also address the question of whether the City of Aurora can be held liable under § 1981). Therefore, the Court dismisses the disparate treatment claim under Count III.

## CONCLUSION

Defendants ably dispute Plaintiff's asserted facts, but generally do not show that Plaintiff's factual assertions are unsupported in the record. The Court must view the facts in the light most favorable to Plaintiff and cannot resolve factual disputes. The Court concludes that Plaintiff's well-supported facts create a genuine dispute as to his New Mexico Whistleblower Protection Act claim (Count I). Count I survives against the City of Hobbs or Chief McCall in his official capacity. Plaintiff's First Amendment claim survives (Count II) against HPD, Chief McCall, Wright, and Kirk. Finally, as to Count III, Plaintiff's § 1981 racial harassment claim survives against Defendants HPD, McCall, Wright, and Kirk, but his disparate treatment claim is dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (**Doc. 187**) is **GRANTED IN PART** and **DENIED IN PART.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE