# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BRANDON ELLIS,
JEREMY ARTIS, and
VASSHAWN ROBINSON,

      Plaintiffs,

vs.    Case No. 2:17-cv-01011 KWR/GBW

HOBBS POLICE DEPARTMENT,
JASON HERRERA, CHAD WRIGHT,
SHANE BLEVINS, JEREMY KIRK,
MATTHEW BURLESON, JIMMY GRIMES,
CHRISTOPHER MCCALL, and J.J. MURPHY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiffs' Motion in *Limine* to Exclude Expert Testimony of James D. Ginger, PHD, filed on November 21, 2019 **(Doc. 191)**.  Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiffs' motion is not well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART.**

### BACKGROUND

This case arises out of alleged racial discrimination in the Hobbs Police Department ("HPD") and retaliation for Plaintiffs' opposition to racial discrimination within the Hobbs Police Department.  Plaintiffs, former HPD Officers, allege they were retaliated against for (1) opposing or reporting HPD's racial discrimination and (2) opposing alleged discriminatory police practices against African Americans.  Defendants include Hobbs Police Department, Chief McCall, and several supervisors and officers.

Plaintiffs filed this case under 42 U.S.C. § 1981 and 1983, and the New Mexico Whistleblower Protection Act.  Plaintiffs' complaint asserts the following claims:

Count I:  New Mexico Whistleblower Protection Act

Count II:  First Amendment Retaliation under § 1983; and

Count III: Racial Discrimination pursuant to § 1981.

Mr. Cooper is an expert in demographics.  He has participated in many voting redistricting cases.  Plaintiffs retained Mr. Cooper to provide an opine on whether HPD's enforcement of the pedestrian in the roadways statute had a disparate impact on minority communities in Hobbs, New Mexico.  **Doc. 191 at 3.**  He opined that 82% of the pedestrians stops under this statute occurred in minority communities.  He formed his opinions roughly as follows.  Plaintiffs requested all CAD reports from Defendants for "each stop or callout for Pedestrian in the Roadway for a two-year period."  **Doc. 204 at 3.**  The call logs contained information included the person detained and location of the stop.  Plaintiffs' counsel put data from the dispatch call logs labeled "pedestrian in roadway" in an Excel sheet.  Mr. Cooper reviewed the Excel data and placed these stops on a map that included demographic data.

Defendants offer Dr. Ginger as a rebuttal witness.  He will opine that one cannot infer discriminatory action by mere demographic data. He will also opine as an expert on police practices.

Plaintiffs filed a motion seeking to exclude Dr. Ginger as an expert witness.  Both parties asserted that an evidentiary hearing is unnecessary and requested the Court rule on the papers.  **Docs. 251, 252.**  Therefore, the Court considers the parties' briefing and attached exhibits.  The Court also reviewed the documents relied upon by Dr. Ginger in forming his opinion, including Mr. Cooper's report and Mr. Stewart's report.  Dr. Ginger reviewed the following documents:

- The curriculum vitae and expert report of Plaintiffs' expert Mr. Cooper, which included demographic data for the City of Hobbs, NM;
- The initial and follow up submission of Plaintiffs' expert Mr. Stewart, dated July 31, 2010; his updated resume and updated curriculum vitae; and
- Plaintiffs Thirteen Supplemental rule 26 Expert disclosure statement.

**Doc. 191-2, Ex. 2, at 1-2.**

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

3

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire. Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591.

Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). Although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005)); *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). "Permissible testimony

provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Richter*, 796 F.3d at 1195.

Where an expert witness's testimony is based on his experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See United States v. Nacchio,* 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *See Goebel*, 215 F.3d at 1087 (noting that a *Daubert* hearing "is not mandated" and that a district court may "satisfy its gatekeeper role when asked to rule on a motion in limine"). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See Nacchio*, 555 F.3d at 1251.

Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district court need not make explicit findings."), *citing United States v. Velarde,* 214 F.3d 1204, 1209 n.3 (10th Cir.2000) (noting the defendant did not challenge the doctor's "credentials, expertise, or qualifications to testify as an expert"); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (specific findings on the record only required on party's objection); *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) (when no objection is raised,

district courts are not required to make "explicit on-the-record rulings" and, "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial.").

## DISCUSSION

Plaintiffs filed a motion seeking to exclude Defendants' expert witness Dr. James Ginger. Defendants engaged Dr. Ginger as a rebuttal expert, primarily assessing the data and opinions in Mr. Cooper's expert report. Dr. Ginger opined that one cannot determine from Mr. Cooper's data whether HPD is discriminatorily targeting African Americans. He opines that HPD "is simply staffing police districts or patrol areas with additional staff to be able to respond to calls for service and criminal activity in a timely manner." **Doc. 191, Ex. 2 at 2.** He also opined that he sees "no evidence from the plaintiff's experts that alleges or supports, with an acceptable epistemology, anything other than an appropriate police manpower staffing and allocation system employed by Hobbs Police Department." *Id.* **at 2.** Dr. Ginger will also identify methods that police departments use to allocate their resources. **Doc. 198 at 1-2.**

### A.   Qualifications as an Expert in Police Practices *et al*.

Dr. Ginger has extensive experience and education in law enforcement. He was an officer for approximately seven years. He served as the Deputy Director of the Police Foundation, a research and training organization committed to improving the quality of policing. He also served as Director of the Southern Police institute at the University of Louisville, from 1988 to 1999. He currently provides consulting services on police practices. He received his PHD from the Center for Public Administration at the Virginia Polytechnic Institute and State University.

Finally, he applies his experience to the issues in this case as follows:

> "Police manpower allocation and deployment are processes that historically deal with data and analysis. These tools are designed, in my experience, to deploy

>   manpower based on the frequency of calls-for-service, the nature and import of those calls, and the nature of a given police agency's proactive response to developments related to on-going police-related functions, processes, and problems. This was true in the 70s when I ran highly focused anti-crime programs for my police department, it was true in the 80s when I designed such allocation practices for the San Antonio Police Department, and it is true today, based on my knowledge and experience as a police trainer, analyst, and manager."

**Doc. 191-2, Ex. 2, at 3.** Therefore, the Court concludes that under Fed. R. Evid. 702 Dr. Ginger is qualified to testify based on his training, education, background, and experience.

### B. Reliability and Relevance of his Opinions.

Plaintiffs object that (1) Dr. Ginger's conclusion is based on insufficient data or evidence and (2) his report fails to assist the factfinder in understanding the evidence and in determining a fact at issue. **Doc. 191 at 8.** The Court agrees in part. The Tenth Circuit held that witnesses "relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014), *quoting* Fed.R.Evid. 702 advisory committee's note (2000 Amendment). The Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. The court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The Court finds that Defendants have satisfied this standard for some, but not all, of Dr. Ginger' opinions.

Mr. Cooper's expert report asserts that 82% of the stops in Hobbs for violation of the pedestrian in the roadway statute occurred in the minority communities. Viewing that data, Defendants argue, a jury might infer that HPD discriminatorily targeted minorities. Dr. Ginger asserts he will opine whether that data is sufficient to make such an inference in light of police

practices.  The Court finds that this testimony is likely useful to put the raw data produced by Mr. Cooper in context.  Moreover, he will testify as to general police practices in allocation of resources.  Considering the *Daubert* standard and FRE 702, the Court finds that this testimony is reliable and relevant, and will assist the trier of fact to understand or determine a fact in issue. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. at 592, 113 S.Ct. 2786.

Moreover, the Court rejects Plaintiffs' argument that these opinions above are based on insufficient data or evidence because he only reviewed Mr. Cooper's expert report and did not look at the underlying data. At this time, it does not appear that Dr. Ginger would need to review the underlying data, as the relevant data is well set out in Mr. Cooper's report.  Moreover, Dr. Ginger is assuming that Mr. Cooper's data is correct and is providing an interpretation of that data. Therefore, it appears that Dr. Ginger has reviewed sufficient data and facts as to the above issues, considering the limited scope of his expert testimony.

However, Plaintiffs are correct that Dr. Ginger has not established an adequate foundation that he is familiar with the practices in Hobbs Police Department or Hobbs crime statistics.  Dr. Ginger opines that "stop, detention, and arrest rates… are more often than not based on factors other than mere geographic or demographic characteristics." **Doc. 191-2, Ex. 2 at 2.**  He also opines that HPD "is simply staffing police districts or patrol areas with additional staff to be able to respond to calls for service and criminal activity in a timely manner." *Id.*

Here, however, there is nothing in the report to indicate that Dr. Ginger consulted any crime statistics regarding Hobbs or any Hobbs police practices.  Rather, Mr. Cooper's data constitutes pedestrian stops by officers patrolling, and not calls for service.  Dr. Ginger has not established that he is familiar with HPD practices or policies, or HPD crime statistics aside from pedestrian stops.  He has not identified whether he recognizes that the data compiled by Mr. Cooper focuses

8

on pedestrian in the roadway contacts, that is, contacts apparently initiated by officers patrolling the streets. The Court finds he has not established any underlying basis, connected to the facts of this case, for his opinion that HPD is simply staffing police districts to respond to calls for service and criminal activity. For example, he asserts that the data is consistent with practices such as "flooding the zone" in high-crime area. But Mr. Cooper's data does not establish that the areas where there were frequent pedestrian stops are high-crime areas.

To the extent Dr. Ginger argues that HPD's pedestrian stops are justified because they occur in higher crime areas, his report does not set sufficiently set this opinion out or justify it. In other words, Dr. Ginger's opinion on whether HPD engaged in discriminatory policing would be "connected to existing data only by the *ipse dixit* of the expert". *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Therefore, the Court concludes that this opinion is not based on sufficient data or evidence and will not help the trier of fact understand a fact at issue.

The Court will therefore limit Dr. Ginger's testimony. Although Dr. Ginger may testify that an inference of discriminatory practices does not follow from Mr. Cooper's data, and testify about general police resource allocation practices, he may not go further. He may not affirmatively testify that "Hobbs PD is simply staffing police district or patrol areas with additional staff to be able to respond to calls for service and criminal activity in a timely manner." **Doc. 191-2, Ex. 2, at 2.** He may not affirmatively testify that Hobbs has an "appropriate police manpower staffing and allocation system." *Id.* He also may not opine that HPD acted in a non-discriminatory manner. The parties shall propose an appropriate limiting instruction when jury instructions are due.

    C.    **Dr. Ginger's testimony should not be excluded as "untimely".**

Plaintiffs assert in their reply brief that Dr. Ginger's proposed testimony as expressed in Defendants' response brief **(Doc. 198)** was not included in his expert report and is therefore not timely.  The Court disagrees.  That Court finds that this proposed testimony was sufficiently disclosed in the expert report. Therefore, the proposed testimony was timely disclosed.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion in Limine to Exclude Expert Testimony of James D. Ginger, PHD **(Doc. 191)** is **GRANTED IN PART AND DENIED IN PART**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE