IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO
_____

BRANDON ELLIS,
JEREMY ARTIS, and
VASSHAWN ROBINSON,

      Plaintiffs,

vs.                                                                   Case No. 2:17-cv-01011 KWR/GBW

HOBBS POLICE DEPARTMENT,
JASON HERRERA, CHAD WRIGHT,
SHANE BLEVINS, JEREMY KIRK,
MATTHEW BURLESON, JIMMY GRIMES,
CHRISTOPHER MCCALL, and J.J. MURPHY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion in *Limine* to Exclude Expert Testimony of William S. Cooper, filed on November 21, 2019 (**Doc. 188**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is not well-taken and, therefore, is **DENIED.**

### BACKGROUND

This case arises out of alleged racial discrimination in the Hobbs Police Department ("HPD") and retaliation for Plaintiffs' opposition to racial discrimination within the Hobbs Police Department. Plaintiffs, former HPD Officers, allege they were retaliated against for (1) opposing or reporting HPD's racial discrimination and (2) opposing alleged discriminatory police practices against African Americans. Defendants include Hobbs Police Department, Chief McCall, and several supervisors and officers.

Plaintiffs filed this case under 42 U.S.C. § 1981 and 1983, and the New Mexico Whistleblower Protection Act. Plaintiffs' complaint asserts the following claims:

Count I:  New Mexico Whistleblower Protection Act

Count II:  First Amendment Retaliation under § 1983; and

Count III: Racial Discrimination pursuant to § 1981.

Mr. Cooper is an expert in demographics. He has participated as an expert in many voting redistricting cases. Plaintiffs retained Mr. Cooper to provide an opine on whether HPD's enforcement of the pedestrian in the roadway statute had a disparate impact on minority communities in Hobbs, New Mexico. **Doc. 191 at 3.** He opined that 82% of the pedestrians stops under this statute occurred in communities with high minority populations. He formed his opinion roughly as follows. When HPD officers stop an individual, they call in to dispatch. Plaintiffs requested all CAD reports from Defendants for "each stop or callout for Pedestrian in the Roadway for a two-year period." **Doc. 204 at 3.** The call logs contained information including the alleged violation at issue (pedestrian in the roadway) and location of the stop. Plaintiffs' counsel put data from these dispatch call logs in an Excel sheet. Mr. Cooper reviewed the Excel data and placed these stops on a map that included demographic data.

Defendants filed a motion seeking to exclude Mr. Cooper as an expert witness. The parties asserted that an evidentiary hearing is unnecessary and requested the Court rule on the papers. **Docs. 251, 252.** Therefore, the Court considers the parties' briefing and attached exhibits.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert.[1] To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire. Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential

---

[1] Defendants did not challenge Mr. Cooper's qualifications as an expert. **Doc. 188 at 3-4.** This is likely because Mr. Cooper is more than qualified to give the limited opinion he will provide in this case.  The Court finds, based on the unchallenged record, that Mr. Cooper possesses the "knowledge, skill, experience, training, or education" in matters involving demographics and census data.  He has been admitted as an expert in numerous similar cases.  *See* **Doc. 204 at 4 n.1.**  Although those cases involved voting cases, his skills and experience are easily transferrable for the limited scope of his opinion in this case.

3

error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591.

Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). Although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005)); *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). "Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Richter*, 796 F.3d at 1195.

Where an expert witness's testimony is based on his experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient

basis for the opinion, and how that experience is reliably applied to the facts. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *See Goebel*, 215 F.3d at 1087 (noting that a *Daubert* hearing "is not mandated" and that a district court may "satisfy its gatekeeper role when asked to rule on a motion in limine"). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See Nacchio*, 555 F.3d at 1251.

Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district court need not make explicit findings."), *citing United States v. Velarde,* 214 F.3d 1204, 1209 n.3 (10th Cir.2000) (noting the defendant did not challenge the doctor's "credentials, expertise, or qualifications to testify as an expert"); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (specific findings on the record only required on party's objection); *Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) (when no objection is raised, district courts are not required to make "explicit on-the-record rulings" and, "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial.").

## DISCUSSION

Defendants argue that Mr. Cooper should be excluded as an expert in this case on five separate grounds. **Doc. 188 at 3-6.** The Court concludes that these arguments generally attack the weight of the evidence and the inferences Plaintiffs will take from Mr. Cooper's testimony, but not Mr. Cooper's opinions themselves. To the extent there are errors in Mr. Cooper's report, the Court finds they do not merit exclusion.

Plaintiffs assert they do not offer Mr. Cooper to testify about whether any of the stops were unconstitutional. The Court agrees with this assessment. Mr. Cooper will testify that 82% of the stops in Hobbs for violation of the pedestrian in the roadway statute occurred in the minority communities. Mr. Cooper received data for all dispatch logs for stops involving alleged violation of the "Pedestrian in the Roadway" statute. This dispatch logs included location data. Mr. Cooper arrived at his conclusion by plotting the pedestrian stops on a map along with the demographics of the area where the stop occurred.

Therefore, Mr. Cooper does not estimate the number of minority stops that occurred. Rather, he estimates that 82% of stops for violation of the pedestrian in the roadway statute occurred in communities with higher minority populations.

Plaintiffs need not show that Defendants in fact engaged in discriminatory policing. In order to prevail on some of their retaliation claims, Plaintiffs must show that when they engaged in protected opposition, they had a reasonable, good faith belief that the opposed behavior was discriminatory. *Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003). Plaintiffs in part testified that they believed HPD was targeting minority communities. This proffered expert testimony tends to corroborate that belief, making it more likely that a jury would find that they had a good faith belief.

For the reasons stated below, the Court finds that the alleged errors raised by Defendants do not render Mr. Cooper's opinion unreliable but tend to go to the weight the jury should give his opinions.  To present expert testimony to the jury, a party must show that the methods employed by the experts in reaching their conclusions are based on reliable methodologies, and that their opinions are based on facts sufficiently tied to the case. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). "When an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014), *cited in Meyer v. Celadon Grp., Inc.*, No. 1:15-CV-01097-LF-KBM, 2017 WL 2465197, at *1 (D.N.M. Jan. 17, 2017).

"In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Id*.  "The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id., quoting Daubert,* 509 U.S. at 596, 113 S.Ct. 2786.

The Court addresses Defendants' objections as follows.  First, Defendants argue that Plaintiffs will use Mr. Cooper's opinion to prove that HPD engaged in race-based policing.  Defendants admit that Mr. Cooper himself will not express any such opinion.  Rather, Mr. Cooper's expert report asserts that 82% of the stops in Hobbs for violation of the pedestrian in the roadway statute occurred in communities with high minority populations.  Therefore, the Court finds this argument not well taken.  Defendants also assert that Mr. Cooper's opinion defines minority to include Hispanics along with African Americans, and therefore is not probative of whether HPD stopped African Americans at a disproportionate rate.  The Court finds this argument goes to the weight of the evidence.

Defendants further argue that Mr. Cooper did not verify the underlying data given to him by Plaintiffs' counsel and inappropriately relied upon data compiled by Plaintiffs' counsel.  "Unless the information or assumptions that [a party's] experts relied on were so unrealistic and contradictory as to suggest bad faith, inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible."  *R.F.M.A.S., Inc. v. So,* 748 F.Supp.2d 244, 269 (S.D.N.Y.2010) (internal quotation omitted), *quoted in Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013).  "An expert opinion is not *per se* unreliable because it relies upon some unverified or inaccurate information provided by the expert's client."  *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013), *citing R.F.M.A.S., Inc. v. So,* 748 F.Supp.2d at 269 (data not inherently unreliable simply because it was provided by a party or its counsel).  Rather, if a party provides its expert "with a piece of false information or withheld relevant data, [the opposing party] can cross-examine the experts on this matter, calling into question the weight that the jury should accord their testimony."  *R.F.M.A.S., Inc.,* 748 F.Supp.2d at 269.  Here, the data used by Mr. Cooper was produced by Defendants and given to

Plaintiffs' counsel. Plaintiffs' counsel put that data into an excel spreadsheet. The Court finds that Defendants can likely effectively cross-examine Mr. Cooper about the data he used in forming his opinion. There is nothing in the record to suggest that experts would not "reasonably rely on those kinds of facts or data." FRE 703. There is also nothing in the record to suggest that Mr. Cooper relied on false or incomplete data. Rather, the Court finds that Mr. Cooper reasonably relied on the Excel sheet containing data from the CAD reports. The Court further finds that Mr. Cooper's opinion is based on sufficient reliable facts, given the limited scope of his opinion.

Mr. Cooper opined that 82% of all *pedestrians stops* occurred in areas with a high minority population. Defendants argue this is wrong because he was not given data on all pedestrian stops, but on stops for violation of Pedestrian in the Roadway statute. Therefore, a more accurate conclusion would have been that 82% of stops for violation of "Pedestrian in the Roadway" statute occurred in communities with a high minority population. The Court does not find this error to be disqualifying. This does not tend to attack his opinions but can easily be clarified on examination. Defendants may cross-examine Mr. Cooper on what he means by "pedestrian stops", but this error, if any, does not warrant exclusion.

Defendants argue that Mr. Cooper did not look at any crime data. Any such analysis was unnecessary and far outside the scope of his limited expert opinion. This is, again, a matter for cross examination. Similarly, Defendants argue that the CAD logs did not track the race of individuals stopped. However, Mr. Cooper does not testify what percentage of stops involved minorities.

Finally, Mr. Cooper was given wrong information about the number of districts in Hobbs. There are six city council districts and five police districts, and he used the city council districts.

9

The CAD logs and underlying data were not organized by district. Therefore, this error may affect his presentation, but Defendants have not shown how this error renders his opinion unreliable.

Considering the *Daubert* standard and FRE 702, the Court finds that Mr. Cooper's testimony is reliable and relevant and will assist the trier of fact to understand or determine a fact in issue. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. at 592, 113 S.Ct. 2786.

**IT IS THEREFORE ORDERED** that Defendants' Motion in *Limine* to Exclude Expert Testimony of William S. Cooper **(Doc. 188)** is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE