## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

BRANDON ELLIS,
JEREMY ARTIS, and
VASSHAWN ROBINSON,

      Plaintiffs,

vs.                                Case No. 2:17-cv-01011 KWR/GBW

HOBBS POLICE DEPARTMENT,
JASON HERRERA, CHAD WRIGHT,
SHANE BLEVINS, JEREMY KIRK,
MATTHEW BURLESON, JIMMY GRIMES,
CHRISTOPHER MCCALL, and J.J. MURPHY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendants' Motion in *Limine* to Exclude Expert Testimony and Report of Robert L. Stewart, filed on November 21, 2019 (**Doc. 189**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

This case arises out of alleged racial discrimination in the Hobbs Police Department ("HPD") and retaliation for Plaintiffs' opposition to racial discrimination within the Hobbs Police Department. Plaintiffs, former HPD Officers, allege they were retaliated against for (1) opposing or reporting HPD's racial discrimination and (2) opposing alleged discriminatory police practices against African Americans. Defendants include Hobbs Police Department, Chief McCall, and several supervisors and officers.

Plaintiffs filed this case under 42 U.S.C. § 1981 and 1983, and the New Mexico Whistleblower Protection Act. Plaintiffs' complaint asserts the following claims:

Count I:  New Mexico Whistleblower Protection Act

Count II:  First Amendment Retaliation under § 1983; and

Count III: Racial Discrimination pursuant to § 1981.

Mr. Stewart is an expert in police procedures and practices. Mr. Stewart is extensively familiar with the facts of this case and reviewed a number of documents, including numerous depositions, CAD reports and call logs.

Defendants filed a motion seeking to exclude Mr. Stewart as an expert witness. The parties asserted that an evidentiary hearing is unnecessary and requested the Court rule on the papers. **Docs. 251, 252.** Therefore, the Court considers the parties' briefing and attached exhibits.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill,

experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire. Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591.

Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Richter*, 796 F.3d 1173, 1195

3

(10th Cir. 2015). Although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005)); *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). "Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Richter*, 796 F.3d at 1195.

Where an expert witness's testimony is based on experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *See Goebel*, 215 F.3d at 1087 (noting that a *Daubert* hearing "is not mandated" and that a district court may "satisfy its gatekeeper role when asked to rule on a motion in limine"); *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009).  The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *Id*.

Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it.  *United States v. Avitia-Guillen*,

680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district court need not make explicit findings."), *citing United States v. Velarde,* 214 F.3d 1204, 1209 n.3 (10th Cir.2000) (noting the defendant did not challenge the doctor's "credentials, expertise, or qualifications to testify as an expert"); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (specific findings on the record only required on party's objection); *Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) (when no objection is raised, district courts are not required to make "explicit on-the-record rulings" and, "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial.").

**DISCUSSION**

Defendants concede that Mr. Stewart is qualified to testify as an expert. **Doc. 189 at 3.** Rather, Defendants argue that Mr. Stewart's opinions should be excluded because (1) they are not based on facts or data; (2) they will not be helpful to the jury; (3) they are unfairly prejudicial to Defendants; and (4) the opinions improperly apply the law to the facts to reach a legal conclusion. The Court agrees with Defendants in part and will exclude certain opinions as impermissible legal conclusions and credibility vouching. However, the Court will allow Mr. Stewart to discuss (1) HPD's buddy system and (2) HPD's policies and procedures and whether they fell below a standard of practice. **Doc. 203 at 5.**

A.   **Mr. Stewart's proposed testimony.**

Plaintiffs do not address Defendants' arguments. Rather, Plaintiffs *appear* to request that a limited subset of Mr. Stewart's opinions be admitted instead. Plaintiff request that the Court allow Mr. Stewart to testify about the Hobbs' police "buddy system" and Hobbs' policies and procedures. They also request he be allowed to opine whether Hobbs' policies and procedures fell

5

below a standard of practice.  In their reply, Defendants did not address whether these narrow opinions are inadmissible but noted that Plaintiffs failed to rebut the arguments in their motion.

Plaintiffs assert that Mr. Stewart will provide insight into a reasonable police department's enforcement of pedestrian laws to address pedestrian safety by focusing on pedestrians who endanger themselves or others.  Mr. Stewart will testify that Hobbs supervisors, in sending police into neighborhoods to stop pedestrians, were instructing patrol officers to troll for want and warrants by stopping pedestrians.  **Doc. 189-1, ¶ 59.**[1]  This opinion is based on HPD Officer Berdoza's own testimony.  *Id.*  Mr. Stewart will opine that the use of the pedestrian statute is highly discretionary and that is rarely used, and the only in a very limited manner.  *Id.*  He will opine whether that there is no evidence that the use of the statute was in reaction to more crime in minority communities.  *Id.*

He will also testify as to how departments avoid a buddy system in which favored officers avoid discipline and gain promotion.  **¶¶ 67-75**.  This system allowed Officer Berdoza to receive no discipline for his use of the N-word during a briefing to brag about the number of arrest of African Americans.  He will opine that Officer Berdoza and Sgt. Herrera supervision fell below standard police training and discipline.  **¶¶ 77-80**.

### B.    Certain limited opinions are not impermissible legal conclusions and will be helpful to the jury.

Defendants argue that Mr. Stewart will impermissibly give legal conclusions that will not be helpful to the trier of fact.  Plaintiffs did not directly respond to this argument but appears to offer to limit the proposed testimony. The Court agrees with Defendants in part.

---

[1] All paragraph citations refer to Mr. Stewart's expert report, **Doc. 189-1**.

To be admissible, an expert's testimony must be helpful to the trier of fact.  Fed. R. Evid.

702.  An expert giving mere legal conclusions without any further explanation is not helpful to the

trier of fact.  *Hansen Constr. Inc. v. Everest Nat'l Ins. Co.*, No. 16-CV-02902-CMA-GPG, 2019

WL 2602510, at *3 (D. Colo. June 25, 2019).  The relevant law is as follows:

> Federal Rule of Evidence 704 allows an expert witness to testify about an ultimate question of fact. But the rule does not permit an expert to instruct the jury how it should rule, if the expert does not provide any basis for that opinion. To be admissible, an expert's testimony must be helpful to the trier of fact. Fed.R.Evid. 702. To ensure testimony is helpful, "[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion." *United States v. Bedford,* 536 F.3d 1148, 1158 (10th Cir.2008) (internal quotation marks and alterations omitted). "The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *United States v. McIver,* 470 F.3d 550, 562 (4th Cir.2006). Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field. *United States v. Dazey,* 403 F.3d 1147, 1171–72 (10th Cir.2005) ("Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.").
>
> As a result, "an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Id.* at 1171. Expert testimony of this sort has been excluded alternatively "on the ground that it usurps the function of the jury in deciding the facts," or because it "interferes with the function of the judge in instructing the jury on the law." *Id.* at 1171 (internal quotation marks omitted). Witnesses are permitted to testify about how the law applies to a certain set of facts, so long as they provide adequate explanations for their conclusions. *Id.; see, e.g., United States v. Buchanan,* 787 F.2d 477, 483–84 (10th Cir.1986) (affirming admission of expert testimony that a homemade device was a firearm and therefore needed to be registered with the Bureau of Alcohol, Tobacco, and Firearms); *United States v. Logan,* 641 F.2d 860, 863 (10th Cir.1981) (an expert may testify about how certain funds were classified by law).

*United States v. Richter*, 796 F.3d 1173, 1195–96 (10th Cir. 2015).  Defendants primarily cite to

*Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). In that case, the Tenth Circuit *en banc* ruled

that opinion testimony by an *attorney-expert* on "the entire range of the applicable law" and directing the jury's "understanding of the legal standards" was inadmissible. *Id.*

Mr. Stewart opines in part that (1) Plaintiffs engaged in protected conduct (¶ 96); (2) Plaintiffs were retaliated against (¶ 97); (3) Defendants violated the Whistleblower Protection Act (¶ 98); (4) Plaintiffs were damaged (¶ 99); (5) Defendants committed constitutional violations; (6) Plaintiffs engaged in a protected activity; and (7) Plaintiffs acted in good faith. These opinions are legal conclusions, and Plaintiffs do not explain how these opinions are admissible.

Rather, Plaintiffs appear to request that Mr. Stewart be allowed to testify on a smaller subset of his opinions expressed in his report, specifically whether HPD actions fell below generally accepted police custom and practice and HPD's "buddy system" so that the jury has an accurate view of how a reasonable police department and supervisors should act. **Doc. 203 at 5.** These opinions do not appear to be impermissible legal conclusions. Mr. Stewart's opinions on deviation from standards of practice appears to be highly relevant to whether Plaintiffs' belief they were reporting or opposing improper or unlawful practice highly relevant. The Court concludes that this limited testimony on factual issues does not stray into legal conclusions and is relevant and helpful to the jury under the circumstances of this case. *See Brown v. Gray,* 227 F.3d 1278, 1287 (10th Cir.2000) (citing district court's admission of expert testimony that city's training was inadequate); *Allen v. Muskogee, Okla.,* 119 F.3d 837, 842–43 (10th Cir.1997) (finding that expert testimony on adequacy of police training was sufficient to support a jury's verdict on municipal liability), *cited in Ortega v. City & Cty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at *4 (D. Colo. Feb. 5, 2013); *Zuchel v. City and County of Denver,* 997 F.2d 730, 742 (10th Cir.1993) ("[c]ourts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement."); *Cavanaugh v.*

8

*Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013) ("A police practices expert could have testified that under the circumstances faced by Officer Davis a reasonable officer would have concluded that Cavanaugh was a threat and used similar force."); *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 917 (N.D. Ill. 2016) ("Reiter opines that the City maintains a code of silence whereby police officers do not report the misconduct of other police officers out of fear of retaliation. According to Reiter, the code is advanced by the City's conscious decision to fail to acknowledge it, to take affirmative steps to minimize its influence, and to fail to discipline officers who engage in misconduct").

### C.     Limited opinions are based on facts or data.

Defendants argue that Mr. Stewart's testimony is not based on the facts or data.  Rather, they assert that he is acting merely as the mouthpiece of the Plaintiffs, or impermissibly vouching for their credibility.

"The credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001). "[E]xpert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *Id. See also United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) ("[T]he jury does not need an expert to tell it whom to believe, and the expert's stamp of approval on a particular witness' testimony may unduly influence the jury.").  This is because "[s]uch testimony: (1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility; and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury." *Hill*, 749 F.3d at 1258 (internal citations and quotations omitted).  Moreover, experts should not "serv[e]

as a mere mouthpiece for the expression of [one party's] version of events." *United States v. Littlejohn*, 2009 WL 5065559, * 5 (W.D. Okla. 2009), *quoted in Lippe v. Howard*, 287 F. Supp. 3d 1271, 1282 (W.D. Okla. 2018).

The Court agrees with Defendants that Mr. Stewart cannot testify that Plaintiffs acted in good faith or vouch for their credibility, solely based on their deposition testimony. However, the Court finds that the limited opinions Plaintiffs now seek for admission are not impermissible vouching or credibility determinations. In their response, Plaintiffs assert they will limit Mr. Stewart may opine whether HPD practices fall below the standard of practice for law enforcement agencies and opine on the "buddy system" in HPD. The Court will allow Mr. Stewart to opine whether HPD practices fell below standards of practice, which will be helpful to the jury in deciding whether Plaintiffs had a reasonable belief. *Martinez v. Salazar*, No. CV 14-534 KG/WPL, 2016 WL 9488862, at *4 (D.N.M. Dec. 14, 2016) ("experts are not barred from assuming facts if it is clear that the expert is assuming facts and not confirming the facts being assumed."), *quoting Chambers v. Fike*, No. 13-1410-RDR, 2015 WL 404810, at *7 (D. Kan. Jan. 29, 2015); *Champagne Metals v. Ken–Mac Metals, Inc.,* 458 F.3d 1073, 1080 n.4 (10th Cir. 2006). The Court finds that Mr. Stewart can opine on whether HPD's actions, as observed by Plaintiffs, fell below the standard of practice of other agencies as it long as it clear Mr. Stewart merely assumes Plaintiffs' facts are correct and does not vouch for them or tell the jury they are credible.

Defendants argue that Mr. Stewart's opinions are not grounded in an independent examination of the facts or data and is merely based on Plaintiffs' version of the facts. The Court notes that most of the opinions Defendants object to on these grounds have already been excluded by the Court as impermissible legal conclusions. *See* **Doc. 189 at 7-8, n. 2** (objecting to Mr. Stewart's opinions that (1) Plaintiffs acted in good faith in reporting alleged misconduct; (2)

defendants violated NMWPA by retaliating against Plaintiffs; (3) Plaintiffs were damaged; (4) Plaintiffs had a reasonable basis to believe that HPD was acting unlawfully; (5) Plaintiffs engaged in activities protected by NMWPA).

Although Mr. Stewart did consult Plaintiffs' depositions, he also extensively read the record, including the depositions of other HPD officers or Defendants, Mr. Cooper's data, and opined on Defendants' self-described actions. **Doc. 189-1 at 2.** For example, Mr. Stewart consulted HPD Officer Berdoza's deposition transcript and opined that Officer Berdoza's self-described actions fell below the standard of practice. *See* **Doc. 189-1, ¶¶ 55, 59, 60.** He also reviewed Mr. Cooper's report and interpreted the data therein. Finally, many of his observations about Hobbs police department operations are based on statements by HPD officers or Defendants themselves, and do not come from the Plaintiffs. **¶¶ 42-90.** The Court finds that Mr. Stewart's opinions on standards of practice and the "buddy system" are based on sufficient facts, are relevant, and would be helpful to the jury.

Considering the *Daubert* standard and FRE 702, the Court finds that Mr. Stewart's testimony is reliable and relevant and will assist the trier of fact to understand or determine a fact in issue. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. at 592, 113 S.Ct. 2786.

### D. <u>Unfair Prejudice</u>.

Defendants argue that Mr. Stewart's testimony should otherwise be excluded as unfairly prejudicial. Any "proffered expert testimony must also pass muster under Federal Rule of Evidence 403." *Schinagel et al. v. City of Albuquerque, et al.*, No. Civ. 07-481 LH/RLP, at *4 (D.N.M. Mar. 25, 2009) (unpublished), *quoted in Martinez v. Salazar*, No. CV 14-534 KG/WPL, 2016 WL 9488862, at *2 (D.N.M. Dec. 14, 2016). Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of

one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.." Fed. R. Evid. 403.

Plaintiffs argue that Mr. Stewart's bolstering of Plaintiffs' credibility will unfairly prejudice them.  The Court agrees that any vouching for the credibility of Plaintiffs should be excluded.  However, the Court finds that Mr. Stewart's opinions on whether HPD's alleged actions fell below the standard of practice for law enforcement agencies and on the "buddy system" are relevant and its probative value is not substantially outweighed by the danger of unfair prejudice or confusion.

## CONCLUSION

The Court will limit Mr. Stewart's opinions as explained above and prohibit him from testifying about legal conclusions, such as whether Defendants violated the constitution.  He also may not vouch for the credibility of Plaintiffs or opine whether Plaintiffs acted in good faith.

However, he may opine on the "buddy system" in HPD and whether Defendants' or HPD officers' policies, procedures, and actions fell outside the standard of practice for law enforcement agencies.

If Defendants request, the Court will consider giving a cautionary jury instruction.  *Ortega v. City & Cty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at *4 (D. Colo. Feb. 5, 2013), *citing Zuchel,* 997 F.3d at 743 (approving of district court's instruction to the jury that "what the law is with regard to the use of force will be contained in the instructions I give you.").

**IT IS THEREFORE ORDERED** that Defendants' Motion in *Limine* to Exclude Expert Testimony and Report of Robert L. Stewart **(Doc. 189)** is **GRANTED IN PART** and **DENIED IN PART.**

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE